IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
AT BUFFALO

DIANA BELLASALMA
67 Hillside Drive                                    CASE NO.
Ellington, CT 06029

       AND

JAMES BELLASALMA
67 Hillside Drive
Ellington, CT 06029

       PLAINTIFFS

       - VS. -                                    COMPLAINT AND JURY DEMAND

COLTON RV, LLC
3122 NIAGARA FALLS BLVD.
N. TONAWANDA, NY 14120

       AND

FIFTH THIRD BANK, N.A.
38 FOUNTAIN SQUARE PLAZA
CINCINNATI, OH 45263

       DEFENDANTS

---

## PRELIMINARY STATEMENT

1.    This case involves claims asserted under the New York Motor Commercial

     Code, New York consumer protection laws, including General Business Law

     Art. 22-A, Consumer Protection from Deceptive Acts and Practices, NY CLS

1

Gen Bus 349 -350 et seq, Fraud, and Specific Performance.

2.   Jurisdiction exists with this Court because (a) the amount in controversy is more than $75,000 and is between citizens of different states and thus invokes 28 U.S.C. 1332, and/or (b) a federal claim exists under the Federal Fair Credit Reporting Act, 15 U.S.C. 1681 et seq, and/or the Equal Credit Opportunity Act, 15 U.S.C. 1691 et seq, invoking 28 U.S.C. 1331.

3.   The allegations of all other claims in this Complaint are incorporated by reference as if fully rewritten herein.

4.   When Plaintiffs purchased the subject motor vehicle in New York, they thought the New York consumer protection laws would protect them. The motor vehicle transaction involved in this case is subject to and covered by the New York Motor consumer protection laws, NY CLS Gen Bus 349 -350 et seq.

5.   Jurisdiction exists with this court because the amount in controversy is more than $75,000 and is between citizens of different states, invoking 28 U.S.C. 1332. Plaintiffs are each a citizen of and domiciled in Connecticut and defendant Colton RV is a citizen of and domiciled in New York who conducts business in New York and elsewhere on a regular basis and defendant Fifth Third Bank, N.A., is a citizen of and domiciled in Ohio who conducts business in Ohio and elsewhere on a regular basis.

6.   This case involves the sale and purchase and financing of a new 2022 Thor

Miramar motor vehicle which occurred in North Tonawanda, New York. According to the Retail Instalment Contract Sales Agreement drafted by Colton RV LLC, the vehicle sale price was $169,998 plus tax, minus trade in equity and down payment, plus added options and various additional fees, the amount financed was $113,619.45 plus finance charges of $140,382.15 and 240 monthly payments of $1,058.34 resulted in a total sale price of $340,639.16l

7.  The motor vehicle was acquired by Plaintiffs as a new motor vehicle in New York, and the place where the relationship of the parties arose is New York because the obligations of each defendant to Plaintiffs arose in New York.

## IDENTIFICATION OF PARTIES

8.  Diana Bellasalma and James Bellasalma are natural persons who entered into a consumer transaction with defendants in North Tonawanda, New York, in July and August 2022 and were at that time citizens of and domiciled and residing in Connecticut and are consumers and buyers within the meaning of all applicable laws. Plaintiffs are ordinary consumers who lack the bargaining power of the sophisticated commercial business enterprise that is Colton RV and Fifth Third in the marketplace, such that there is a substantial disparity in bargaining power between Plaintiffs and defendants.

3

9.    Defendant Colton RV, LLC, hereafter referred to as Colton RV, was at all times relevant a supplier and merchant and creditor and limited liability company doing business in New York and elsewhere under the name of Colton RV and is the seller and creditor who sold the subject RV that Plaintiffs acquired from Colton RV in New York and agreed, as part of the deal, to accept monthly payments on the vehicle cost under a Retail Instalment Contract Sales Agreement which document was drafted by Colton RV and is a consumer credit contract between Plaintiffs and Colton RV. Colton RV has its principal place of business in and is a citizen of New York. Colton RV was, at all times relevant, engaged in the business of selling and financing the sale of recreational and other  motor vehicles through its authorized dealerships and agents that it maintains in North Tonawanda, New York and elsewhere. At all times relevant, Chuck Partsch, Kevin Link, Kevin Kirisiits, and Jennifer Hagan were employees and agents of Colton RV acting within their scope of authority for and on behalf of Colton RV.

10.   Defendant Fifth Third Bank, N.A., hereafter referred to as Fifth Third, was and at all times relevant is creditor doing business in New York and elsewhere under the name of Fifth Third Bank. Fifth Third purchased or otherwise acquired and/or accept an assignment from supplier, merchant and creditor Colton RV, the Retail Installment Contract Sales Agreement

4

which Plaintiffs and Colton RV entered into on August 26, 2022 in New York. Subsequent to the transaction between Plaintiffs and Colton RV, Colton RV conveyed and/or assigned its rights and obligations under the Retail Instalment Contract Sales Agreement with Plaintiffs to Fifth Third, which rights and obligations Fifth Third accepted and in the process it paid consideration to Colton RV for the assignment. By accepting Colton RV's assignment of the subject Retail Instalment Contract Sales Agreement, Fifth Third accepted and agreed that its position under and as defined in the terms of the retail instalment contract Sales Agreement would be that of the seller of the subject RV to Plaintiffs and Fifth Third is not a holder in due course of any instrument, note, contract or obligation signed by either or both Plaintiffs.

11.   As part of the terms of the Retail Instalment Contract Sales Agreement between Plaintiffs and Colton RV one terms states in Bold Face and capital letters that

> NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

12.   As By purchasing the subject Retail Instalment Contract Sales Agreement Fifth Third became and is a holder under this clause. As a result of the

5

above, Fifth Third "stands in the shoes" of Colton RV's liabilities and obligations for all purposes of this Complaint, in accord with the contract term recited above.

13.  Plaintiffs bring this action for monetary damages and/or equitable remedies because of each defendants' acts and omissions with Plaintiffs.

## FIRST CLAIM: BREACH OF CONTRACT

14.  The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

15.  This claim is in addition to and/or in the alternative to all other claims in this Complaint.

16.  This claim is for breach of contract by Colton RV and for which Fifth Third is liable jointly and/or severally.

17.  After months of researching and searching, Plaintiffs decided on a motor home model that they wanted to use for their personal and family retirement travels and use and might be interested in buying. It was a 2022 Thor Miramar model recreational vehicle. Unable to find a local dealer who had the subject model RV, Plaintiffs telephoned Thor Motor Coach directly and spoke with its employee Brandon Tom. After inquiring, he told Plaintiffs that the dealer location closest to them where they could see and discuss the purchase of the motor home model they wanted would be at

Colton RV in North Tonawanda in New York. Plaintiffs also saws a video taken at Colton RV on youtube.com about the motor home model they were interested in. Since Colton RV was about 382 miles and nearly a six hour drive away from Plaintiffs, they called Colton RV and spoke to Chuck Partsch, an employee and salesperson for the dealership. They together discussed the motor home model they were interested in, its characteristics and equipment, its price, and more details and he transferred Plaintiffs' phone call to Kevin Link, another employee who said he was the "finance manager" of the dealership.

18.     Plaintiffs and Mr Link then talked about the vehicle, its costs, down payment and trade in numbers, along with financing part of the sales price, and their description of the two vehicles they wanted to trade in toward the purchase price of the new 2022 Thor Miramar vehicle. One trade in was a Ford pickup truck with luxury level trim and the other vehicle was a Grand Design recreational vehicle.

19.     Colton RV requested and was given a description of the Plaintiffs' two trade in vehicles, including the existence and amounts of the debt on the two trade in vehicles and approximately what the payoff balances would be. Plaintiffs told Colton RV that the Ford truck trade in balance was owed to Citizens Bank and the payoff on the Grand Design RV was owed to M&T Bank, and told Colton RV what they estimated to be the loan payoff on each

of the trade in vehicles. Colton RV sent Plaintiffs a request for the bank information for the two vehicle loans and said they would "set up the deal" and let them know what the numbers would be for the cost and monthly payments to buy the Thor RV. Plaintiffs sent to Colton RV all the trade in information that Colton RV requested of them, and spoke again with both the salesperson and the finance manager.

20.     Colton RV advised Plaintiffs of the estimated monthly payment would be for Plaintiffs to purchase the Thor RV and trade in their two vehicles. Plaintiffs told Colton RV that they were willing to make a large payment down on the Thor RV deal. Colton RV wanted a deposit by credit card to be paid to it to hold the RV and Plaintiffs authorized a credit card charge of $1,500 as a deposit to go toward the cost of the subject RV.  Colton RV accepted and thereafter processed the credit card charge and received the amount of $1,500.

21.     After more discussions, and everything sounding like it would be acceptable to Plaintiffs, Plaintiffs agreed to drive to the dealership on August 26, 2022 see the RV and to do the paperwork and turn over the trade in vehicles at the Colton RV dealership if it all worked out. Colton RV said it would set up the final numbers on the transaction after it would verify the loan payoff amounts.

22.     On or about August 19, 2022, Kevin Link, Colton RV's finance manager,

telephoned Plaintiffs with what he said was "good news." Colton RV's finance manager then represented to Plaintiffs that the loan payoff on the Ford truck trade in was actually $40,000 less than Plaintiffs thought the payoff was. Wanting to be certain because of the money difference it would make in the purchase, Mr Bellasalma questioned Colton RV's finance manager on the accuracy of the payoff number that Colton RV's finance manager told Mr Bellasalma had been received from the lien holder bank but Colton RV's finance manager insisted that he was right and that Colton RV had the correct payoff number for the Ford truck. As a direct result of Colton RV's representations, Plaintiffs decided to take the six hour drive to Colton RV and see the 2022 Thor RV and make a final decision on buying it and doing the sales transaction paperwork. The assurance of Colton RV about the numbers was important to Plaintiffs in making the decision to go to Colton RV. Plaintiffs did not want to drive from their home in Connecticut to Colton RV in western New York, for the hours and miles necessary to get there without being certain that the loan payoff and other numbers were accurate and that the two trade in vehicles would be paid off by Colton RV as a consequence of the transaction to acquire the new Thor RV. Plaintiffs believed Colton RV's finance manager and did not think he was misleading them because he firmly insisted that he had the correct numbers "in front" of him. Although Plaintiffs asked Mr Link several times

9

if he was sure about his numbers, he kept insisting the numbers he was using were right. Because of that assurance by the dealership finance manager, Plaintiffs decided they would be able to afford to get a higher cost warranty package that Colton RV wanted to sell them as part of the deal.

23.  Plaintiffs drove the approximately 382 miles to Colton RV.

24.  Upon arrival at Colton RV on August 26, 2022 Plaintiffs looked at the subject RV and had further discussions with Colton RV's salesperson Chuck Partsch, and finance manager Kevin Link, and service manager Lawrence Nwosu, each of whom made representations about the RV. In particular Chuck Patsch and Kevin Link again made more specific representations to Plaintiffs as to the payoff amount owed on Plaintiffs' two trade in vehicles.

25.  In the sale and delivery process, which took two and one half days to finish, Plaintiffs were again told by both Chuck Partsch and Kevin Link that the Ford truck loan payoff amount was about $40,000 less than what Plaintiffs thought, Plaintiffs again asked each of them if they were sure that the Ford payoff number they were using in the sale was correct and each employee of Colton RV assured them that they were using the correct payoff number for the Ford trade in vehicle. Final terms were worked out between the parties by which Plaintiffs would purchase from Colton RV, and Colton RV would sell to Plaintiffs the subject RV along with other services.

26.  On August 26, 2022 Colton RV and Mr Bellasalma and Mrs Bellasalma all

signed the Retail Instalment Contract Sales Agreement which Colton RV
had drafted for the transaction and which said, by its terms, that Colton RV
was the seller and Plaintiffs were the buyers, and the Retail Instalment
Contract Sales Agreement was the "sales agreement" by which Plaintiffs
"agree to purchase the Property from Seller" which was described as the
subject RV involved in this case, that the delivery of the new RV to
Plaintiffs was not "conditional," that "the Seller and any entity to which it
may transfer this Contract" were subject to the Retail Instalment Contract
Sales Agreement, and that the Seller of the vehicle, Colton RV, was
assigning the Retail Instalment Contract Sales Agreement to Fifth third
Bank in Wilmington, Ohio. Under this Retail Instalment Contract Sales
Agreement Colton RV agreed to sell and Plaintiffs agreed to buy the RV and
a vehicle related service contract, a Tire & Wheel protection package, a
paint protection package, a roadside assistance package, and a windshield
protection package and Plaintiffs agreed to trade in their two trade in
vehicles and receive a trade in allowance that would be applied to the
purchase of the new RV, Colton RV agreed to payoff the loan balances owed
on the two trade in vehicles, and Colton RV agreed that Plaintiffs would pay
the balance of the Retail Instalment Contract Sales Agreement, together
with credit service charges on the unpaid balance, in monthly payments of
$1,058.34 beginning on September 25, 2022.

27. Plaintiffs also agreed to purchase from Colton RV and Colton RV agreed to sell to Plaintiffs a washer and dryer and television satellite system and accept Plaintiffs' $1,500 credit card deposit as payment for those items. These items were purchased solely for use with the RV which they were buying and which Colton RV was selling to them.

28. Plaintiffs gave Colton RV their two trade in vehicles, the Grand Design RV and the Ford truck, and paid the additional $30,000 down. Colton RV accepted the two trade in vehicles under the terms of the Retail Instalment Contract Sales Agreement which it had drafted and delivered to Plaintiffs the new Thor RV. When Plaintiffs left Colton RV with the new Thor RV, they had been led to believe by the representations of Colton RV that the transaction was final in all respects and that Colton RV either had lived up to all its promises or that any remaining to be done, such as making the loan payoffs on the two trade in vehicles, would be done in the coming days.

29. Colton RV was to pay off the two trade in vehicle loan balances and transfer the new RV title to Plaintiffs, but it never did so and still has not done so and that failure is deceptive to the consumer purchaser.

30. Among the documents drafted by Colton RV and which it required Plaintiffs to sign on August 28, 2022 was a "Colton RV There is No Cooling Off Period" notice that led Plaintiffs to believe that the Retail Instalment

Contract and Sales Agreement between them and Colton RV was binding on all parties as written and could not be cancelled except "for legal cause, such as fraud."

31.  Four days after the Retail Instalment Contract Sales Agreement was signed, a man from Colton RV telephoned Plaintiffs and said he was the new finance manager at Colton RV and that Plaintiffs would have to pay Colton RV an additional $40,000 if they wanted the RV because Wells Fargo had a different loan payoff amount for the Ford truck trade in from what Colton RV had put on the Retail Instalment Contract Sales Agreement that Colton RV had itself drafted. What Colton RV knew but did not tell Plaintiffs was that the finance manager that Plaintiffs had dealt with, Kevin Link, had been fired after this transaction was "closed" by him on behalf of Colton RV.

32.  Plaintiffs explained that the Ford truck loan was never with Wells Fargo and the loan was with Citizens Bank.

33.  When Colton RV still insisted Plaintiffs pay them $40,000, Plaintiffs asked to cancel or rescind the entire transaction but Colton RV's new finance manager, on behalf of Colton RV, refused to rescind or cancel it and said that Plaintiffs still had to pay them $40,000 more. By refusing to cancel the sale, Colton RV has waived any right to later assert a rescission of the Retail Instalment Contract Sales Agreement.

13

34.  Colton RV told Plaintiffs that it had paid off the Grand Design RV loan but that it had not paid off the Ford truck loan, contrary to its agreement to do so. At the time Colton RV knew that its refusal to pay off the Ford truck loan would force Plaintiffs to either keep making payment on the Ford truck which Colton RV had already accepted from them and was not giving back to them, or suffer a negative impact on their credit rating. As a direct and proximate result thereof, Plaintiffs have been forced to continue making the Ford truck loan payments even though Colton RV has possession of the truck, and forcing such upon the Plaintiffs is deceptive to the consumer purchaser.

35.  What Colton RV knew which it knew but which it did not disclose to Plaintiffs was that the loan payoff on the Grand Design RV had not been obtained from M&T Bank until July 28, 2022, 2 full days after the parties had signed the Retail Instalment Contract Sales Agreement, and that the loan payoff amount was actually $43,650.19, and that the loan payoff on the Ford truck had not been obtained from Citizen Bank until August 28, 2022 and not confirmed in writing until August 31, 5 full days after the parties had signed the Retail Instalment Contract Sales Agreement. Thus, when Colton RV drafted its sales documents for the Thor RV sale to Plaintiffs, and when it told Plaintiffs that it would pay off the two trade in vehicles as part of the process, and that the Ford truck payoff was $40,000

14

less than Plaintiffs thought it was, Colton RV knew or should have known that in fact it did not know, and did not have any confirmation as to, what the actual Ford truck payoff would be and yet it told Plaintiffs that it did, thus misrepresenting to Plaintiffs a material term of the transaction.

36.   Plaintiffs have also complained to Kevin Kirisiits, Colton RV Vice President, and Jennifer Hagan, Colton RV Finance Director, to no avail.

37.   In addition, Colton RV represented to Plaintiffs that their monthly loan payment would be $1,044.37 for the transaction. Subsequent to that representation Colton RV switched the loan payment to $1,058.34.

38.   In the retail vehicle sales industry this tactic of increasing the actual monthly payment amount above what was represented to the consumer buyer in the sales process, and agreed upon, by a few dollars more goes by the trade name of "penny pumping" and operates under the sales theory that if a purchasing consumer will agree to the first number then the seller can "pump up" that number by a small amount of dollars on the final Retail Instalment Contract Sales Agreement and the consumer will not likely even notice the increase but if they do they will not likely object to it and thus, the dealer can get extra profit in its pocket from the tactic. Such an act or omission is deceptive to the Plaintiffs and any consumer purchaser and the practice of it by Colton RV was and is injurious and deceptive to the public and consumers at large.

15

39.   Meanwhile, Plaintiffs received a notice of loan assignment and a notice of loan payment requirement from Fifth Third Bank on the new Thor RV loan which Colton RV has "cashed" with the Bank.

40.   In the RV retail sales industry, "cashing the deal" is a trade term used to describe the process whereby the selling dealer assigns the Retail Instalment Contract Sales Agreement in the deal to the bank and the bank, as a consequence, pays the dealer the agreed upon consideration amount to "buy" the right to collect the payments Plaintiffs are required to make under the Retail Instalment Contract Sales Agreement. Thus, Colton RV has both the trade in vehicles from Plaintiffs, delivered the new Thor RV to Plaintiffs, and has been paid by the bank for assigning and/or transferring the Retail Instalment Contract Sales Agreement to the bank. In short, Colton RV got what it wanted, Fifth Third got what it wanted, and neither defendant have transferred the new RV title to Plaintiffs and Plaintiffs have been forced by defendant's acts and omissions to make both the Ford truck loan payment and the Thor RV loan payment or have their credit record damaged to their injury, and doing such is deceptive to the consumer purchaser.

41.   Colton RV subsequently withheld the new RV title from Plaintiffs because Plaintiffs would not pay $40,000 more after Colton RV refused the Plaintiffs' request to cancel the contract, thereby breaching its contract of

16

sale and obligation to deliver title to the consumer buyer in a timely manner and doing such is deceptive to the consumer purchaser.

42. Subsequently Colton RV admitted that it was withholding the new RV title because Plaintiffs would not pay $40,000 more after Colton RV refused the Plaintiffs' request to cancel the contract.

43. Subsequently, Colton RV represented to Plaintiffs that the Plaintiffs actually had to pay to Colton RV the full amount of the Ford truck loan payoff of $52,568.87 when that was false and doing such is deceptive to the consumer purchaser.

44. What Colton RV knew and which Plaintiffs did not know and which Colton RV did not tell Plaintiffs and thereby misled Plaintiffs about, was that it had already calculated the retail value of both of the Plaintiffs' two trade in vehicles and that it could make a sizable profit on them later without having to get any extra money from Plaintiffs at all. On or about August 26, 2022, Colton RV had calculated the retail sales value of the Grand Design RV trade in to be $49,998 and since the loan payoff was only $43,650.19 Colton RV would be able to make a profit of at least about $6,000 on the RV. On or about August 26, 2022, Colton RV had calculated the retail sales value of the Ford truck to be $89,998 and since the loan payoff was only $52,568.87, Colton RV would be able to make a profit of at least $37,000 on the truck. Colton RV knew the above numbers, Plaintiffs did not, and

Colton RV hid these numbers from Plaintiffs and misled Plaintiffs as to the truth about the dealer's self-proclaimed need for Plaintiffs to pay it another $40,000 which later became $52,568.87.

45.    Upon information and belief, Plaintiffs state that Colton RV did all of this for the sole purpose of forcing Plaintiffs to pay it additional monies that it knew it did not need in order to make a sizable profit off the sale to Plaintiffs when in fact the transaction already had built into it by Colton RV a profit of $19,334 on the soft add on's, a profit of $5,615.28 on the dealer reserve kickback, a profit of $6,347.81 on the Grand Design RV trade in, a profit of $37,429.13 on the Ford truck trade in, and a profit of $18,053 on the RV itself - all for a total of $98,484.41 profit without making Plaintiffs pay anything more than Colton RV already had received. But it represented to Plaintiffs that they "owed" Colton RV more than $52,000 more.

46.    In fact, on or about August 26, 2022 Colton RV had Plaintiffs sign multiple documents, some of which contained conflicting terms and representations with other documents and/or representations that had been made to Plaintiffs. Those misrepresentations were made knowingly and with intent by Colton RV and doing so is deceptive to the consumer purchaser.

47.    Subsequently, Colton RV represented to Plaintiffs that new terms of credit would have to be signed for the transaction and Colton RV sent a new Retail Instalment Contract Sales Agreement to Plaintiffs which changed

18

numerous terms and which was only for Mr Bellasalma to sign, without
Mrs Bellasalma to sign, even though they both were on the original loan
papers. As a result Colton RV changed the terms of credit that had been
first offered to Mr Bellasalma and declined and/or withdrew the terms of
credit that had been offered to Mrs Bellasalma on August 26, 2022 and
Colton RV thereafter failed to provide either plaintiff with the mandatory
"adverse action" written notice required under the ECOA and/or FCRA
federal laws. In addition neither plaintiff has received any mandatory credit
"adverse action" or other formal notice of the change in terms by Colton RV
that were previously offered. Misrepresenting terms and changing the
terms without the formal mandatory notice required by law is deceptive to
the consumer purchaser and is an act or practice in violation of the FCRA
and/or ECOA and which is misleading and/or deceptive.

48. As a result of the allegations above and below, among other things, each
defendant is in breach of the terms of the Retail Instalment Contract Sales
Agreement between the parties.

49. At the time Plaintiffs were purchasing the new Thor RV, Colton RV knew
that the RV had actually been sitting on the dealer's lot unsold for 247 days.
Plaintiffs did not know that and Colton RV did not tell them that fact. The
trade term for the deterioration that an RV that is sitting unsold on a
dealer's lot goes through just sitting there is "lot rot," which would explain

the defects that the dealer had to work on before it could deliver the RV to Plaintiffs, and the defects that remain to this day. Colton RV knew or should have known that telling Plaintiffs this fact would result in a lower sales price for the RV so it withheld that information from Plaintiffs although it knew or should have known that Plaintiffs would want to know that information.

50.     At the time the Plaintiffs agreed to purchase the service contract, a Tire & Wheel protection package, a paint protection package, a roadside assistance package, and a windshield protection package from Colton RV, their decision was made in whole or in part by Colton RV's representation that the Ford truck loan payoff as $40,000 less than they anticipated so Plaintiffs thought they could afford those optional vehicle related services. In the RV retail sales industry these added items are called "soft add on's" which is a trade term used to describe dealer added sales items which add no "hard" value to the goods being purchase and, hence, are "soft" values, if any. Plaintiffs expected that Colton RV might make a reasonably modest profit on the soft add on's, which altogether had a cost to Plaintiffs of $23,379. What Colton RV knew, which Plaintiffs did not know and which Colton RV did not tell them, was that the soft add on's cost had $19,334 dealer profit packed into the dealer's stated price.

51.     During the sales process, Colton RV's finance manager Kevin Link

represented to Plaintiffs that since it was the end of the month he was able to "move numbers around and get the interest rate lower" and that the 9.49% number on the Retail Instalment Contract Sales Agreement was "the best he could give" when, in fact, the number he used was not the best he could give because Fifth Third provided Colton RV with a low-to-high "spread" of interest rates that Colton RV could select from to use in the Plaintiffs' transaction and promised a kickback to Colton RV, the amount of which was dependent on the size of the interest number Colton RV used in the transaction. In other words, the higher the interest rate Colton RV used, the higher the size of the bank's kickback to Colton RV, thus enticing Colton RV to never give a consumer "the best" interest rate it could give and any representation otherwise, such as given to Plaintiffs here, was knowingly not true when made. Such an act or omission is deceptive to the Plaintiffs and any consumer purchaser and the practice of it by Colton RV was and is injurious and deceptive to the public and consumers at large.

52. At the time Plaintiffs were purchasing the new Thor RV, the Retail Instalment Contract Sales Agreement had a stated annual percentage rate of interest at 9.49%. Plaintiffs believed and were led to believe by Colton RV that the bank had set the interest rate that would be applicable to the Retail Instalment Contract Sales Agreement. What they did not know, but which Colton RV knew and did not disclose to Plaintiffs was that it was the

dealer that set the interest rate number and that the number they selected was chosen because using that number generated a kickback by the bank to Colton RV equal to 4% of the finance charge, or $5,615.286 of extra profit that plaintiff was not aware of solely because Colton RV had increased the interest rate higher than necessary to get the bank financing approved. Such an act or omission is deceptive to the Plaintiffs and any consumer purchaser and the practice of it by Colton RV was and is injurious and deceptive to the public and consumers at large.

53.   At the time Plaintiffs were purchasing the new Thor RV, the RV had a "MSRP" price of $240,743. So when Colton RV said they would sell it to Plaintiffs for only $169,998, Plaintiffs thought the actual fair market value of the RV was indicated by the MSRP so they were getting an exceptionally good price when, in truth and in fact, it was not. What Colton RV knew, which Plaintiffs did not know and which Colton RV did not tell them, was that the MSRP number was not representative of the actual fair market value of the RV and that actually the new RV had been purchased from Thor for only $151,945. When Colton RV said they would sell it to Plaintiffs for only $169,998, Plaintiffs thought they were getting a substantial discount from the actual value of the RV when, in truth and in fact, they were not because the practice in the industry is Colton RV knew the MSRP price was not what they sold RV's for but instead such RV's were routinely

sold for substantially less than MSRP and the use of such a high MSRP was intended to and did create a false perception in the mind of consumer buyers that the RV was worth the MSRP and therefore the actual selling price, which is often tens of thousands of dollars less than MSRP was the dealer selling at a substantial discount when in fact it was not because the dealer never intended to sell the RV at MSRP because the dealer knew or should have known that the RV's true market value was substantially less than the MSRP number.

54. Defendants each failed to comply with its obligations and requirements under New York consumer protection laws to the injury of Plaintiffs.

55. Plaintiffs acquired the new Thor RV in reliance on the vehicle being subject to the New York Motor Vehicle and consumer protection laws and on the advertising representations and on reliance that defendants would comply with any and all lawful obligations to it under New York laws because the sale of the subject RV to them occurred in New York.

56. Plaintiffs provided Colton RV, Colton RV's President, and Colton RV's Customer Relations Manager, acting on behalf of and for the defendant Colton RV, with a reasonable opportunity to cure its breaches of the terms of its Retail Instalment Contract Sales Agreement but it has failed to do so.

57. Plaintiffs asked Colton RV to take the vehicle back and refund their money and return their trade in vehicles but it refused and has not done so. At the

time Plaintiffs requested defendant to rescind and cancel the transaction and take the Thor RV back, Colton RV knew or should have known that it had failed to comply with its obligations under the Retail Instalment Contract Sales Agreement, and such acts and omissions are deceptive to the consumer purchaser.

58.   Colton RV sold a motor vehicle to Plaintiffs on August 26, 2022. Colton RV was required by law to process the title and/or registration and as of October 10, 2022 Colton RV has not delivered title or registration to Plaintiffs.

59.    Each and every act and omission and practice set forth above as exercised by Colton RV was and is deceptive to the Plaintiffs and any consumer purchaser and the practice of each and every such act or omission or practice by Colton RV was and is injurious and deceptive to Plaintiffs and the public and consumers at large.

60.   As a result of the above facts, defendants jointly and severally breached the terms of the Retail Instalment Contract Sales Agreement and violated the New York Motor Vehicle law and New York's consumer protection laws to Plaintiffs' injury.

**SECOND CLAIM: VIOLATION OF NEW YORK CONSUMER**

## PROTECTION FROM DECEPTIVE ACTS AND PRACTICES STATUTE

61.    The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

62.    This claim is in addition to and/or in the alternative to all other claims in this Complaint.

63.    This claim is for defendants' joint and several violations of GBL 349 - 350 et seq.

64.    NY GBL 349-a declares any deceptive act or practices in the conduct of any business, trade or commerce or in the furnishing of any service in New York to be unlawful.

65.    NY GBL 349-c creates an additional civil penalty for consumer frauds against elderly persons which is defined by the law as a person who is 65 years of ago or older. Plaintiff Diana Bellasalma was born in 1957 and was 65 years of age in August 2022, prior to the sale of the subject RV by Colton RV.

66.    Upon information and belief, Colton RV regularly advertises on the internet and otherwise in New York to consumers in the public marketplace for the purpose of soliciting the sale of recreational vehicles by it to consumers in the New York marketplace and other marketplaces.

67.    The acts and omissions and practices exercised by Colton RV as recited above were each and every one willfully and/or knowingly committed.

25

68.     The deceptive acts and omissions and practices exercised by Colton RV as
        recited above were each and every one in relation to and part of a consumer
        transaction between it and Plaintiffs, in that Plaintiffs were purchasing
        from and Colton RV was selling to Plaintiffs the described goods and
        services for their family, household, and/or personal use, and thus were
        "consumer oriented."

69.     The acts and omissions and practices exercised by Colton RV as recited
        above were each and every one misleading in a material respect, in that as
        part of the consumer transaction between the parties Plaintiffs paid over
        $30,000 and gave possession of two of their privately owned motor
        vehicles worth, by defendant Colton RV's own estimate, about $140,000
        and became obligated to pay over $100,000 in interest charges in the
        course of the consumer transaction with defendants and they would not
        have done so if they had known the truth about the transaction which
        Colton RV knew but concealed from Plaintiffs.

70.     The acts and omissions and practices exercised by Colton RV as recited
        above were each and every one injurious to and directly and proximately
        caused injury to Plaintiffs, in that as part of the consumer transaction
        between the parties Plaintiffs paid over $30,000 and gave possession of
        two of their privately owned motor vehicles worth, by defendant Colton
        RV's own estimate, about $140,000 and became obligated to pay over

26

$100,000 in interest charges in the course of the consumer transaction with defendants and are now left without the Grand Design RV, without the Ford truck, but have the Thor RV but not the vehicle title or registration to it and are unable to use it because they are unable to obtain license and registration that would allow it to be used for its intended purpose of traveling on public roadways because Colton RV is withholding the vehicle title or registration from processing into Plaintiffs' names, thereby interfering with Plaintiffs' right to travel, both intrastate and interstate.

71. N.Y. GBL 350 declares any false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in New York to be unlawful.

72. N.Y. GBL 350-a defines false advertising as including "representations made by statement, word, design, device, sound or any combination thereof" and also takes into account the extent to which advertising fails to reveal facts material in the light of such representations with respect to the commodity to which the advertising relates.

73. The acts and omissions and practices exercised by Colton RV as recited above were each and every one advertising and false advertising in the conduct of the business and trade and commerce of Colton RV which occurred in New York.

74. The false advertising acts and omissions and practices exercised by Colton

RV as recited above, and which include failing to reveal facts that were material as further described above, were each and every one in relation to and part of a consumer transaction between it and Plaintiffs, in that Plaintiffs were purchasing from and Colton RV was selling to Plaintiffs the described goods and services for their family, household, and/or personal use, and thus were "consumer oriented."

75. The false advertising acts and omissions and practices exercised by Colton RV as recited above, and which include failing to reveal facts that were material as further described above, were each and every one misleading in a material respect, in that as part of the consumer transaction between the parties Plaintiffs paid over $30,000 and gave possession of two of their privately owned motor vehicles worth, by defendant Colton RV's own estimate, about $140,000 and became obligated to pay over $100,000 in interest charges in the course of the consumer transaction with defendants and they would not have done so if they had known the truth about the transaction which Colton RV knew but concealed from Plaintiffs.

76. The false advertising acts and omissions and practices exercised by Colton RV as recited above, and which include failing to reveal facts that were material as further described above, were each and every one injurious to and directly and proximately caused injury to Plaintiffs, in that as part of the consumer transaction between the parties Plaintiffs paid over $30,000

and gave possession of two of their privately owned motor vehicles worth, by defendant Colton RV's own estimate, about $140,000 and became obligated to pay over $100,000 in interest charges in the course of the consumer transaction with defendants and are now left without the Grand Design RV, without the Ford truck, but have the Thor RV but not the vehicle title or registration to it and are unable to use it because they are unable to obtain license and registration that would allow it to be used for its intended purpose of traveling on public roadways because Colton RV is withholding the vehicle title or registration from processing into Plaintiffs' names, thereby interfering with Plaintiffs' right to travel, both intrastate and interstate.

77.   Plaintiffs relied on the truthfulness of the representations, advertisements, statements, and acts of Colton RV and on there being no omissions of any material matters, and had a right to so rely, and were deceived by Colton RV to their injury and damage. In its dealings with Plaintiffs, Colton RV and its employees who dealt with Plaintiffs knew or should have known that Plaintiffs were acting in reliance on the truthfulness of the representations, advertisements, statements, and acts of Colton RV and on there being no omissions of any material matters.

78.   In the course of the consumer transaction between the parties, Colton RV and its employees who dealt with Plaintiffs concealed its deceptive, false,

misleading and fraudulent acts and omissions.

79.    Each and every one of the acts, omissions, and practices described above
affect the consumer public at large in that, among other things, the
deceptive acts and omissions of Colton RV, in violation of the New York
laws, enable Colton RV to gain a competitive economic advantage over
honest and law-abiding RV retail sellers in the marketplace by its deceptive
acts and practices and material omissions and false advertising, thus
causing economic harm in the marketplace and thereby affecting the
consumer public at large. Moreover, the acts and omissions of Colton RV
described above have enabled it to remove the Ford truck trade-in vehicle
from sale in the marketplace, preventing other consumers in the
marketplace from purchasing and using it for their personal use, and
Colton RV maintaining sole possession of the Ford truck interferes with
Plaintiffs' possession of it for their personal use, and Colton RV's holding
back the vehicle title or registration refusing to provide vehicle title or
registration to Plaintiffs and failing to provide vehicle title or registration
and recording the lien interest of Fifth Third upon the vehicle title or
registration interferes with the business activity of Fifth Third to its
account holders and consumer public at large as well as interfering with the
obligations Fifth Third to its stockholders, which include consumer and
business investors.

80.    Each and every act and omission and practice set forth above as exercised by Colton RV was and is deceptive to the Plaintiffs and any consumer purchaser and the practice of each and every such act or omission or practice by Colton RV was and is injurious and deceptive to Plaintiffs and the public and consumers at large and is a violation of NY GBL 349 et seq and/or NY GBL 350 et seq.

81.    As a result of the above facts, defendants jointly and severally violated  NY GBL 349 et seq and/or NY GBL 350 et seq directly and/or proximately causing Plaintiffs injury and damage.


## THIRD CLAIM: ECOA AND/OR FCRA VIOLATIONS

82.    The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

83.    This claim is in addition to and/or in the alternative to all other claims in this Complaint.

84.    This claim is for violation of the Federal Fair Credit Reporting Act, 15 U.S.C. 1681 et seq, and/or the Equal Credit Opportunity Act, 15 U.S.C. 1691 et seq and/or their regulations by Colton RV and for which Fifth Third is jointly and severally liable.

85.    Plaintiffs bring this action for damages based upon Defendant Colton RV's violations of the Fair Credit Reporting Act and/or the Equal Credit

Opportunity Act and Plaintiffs seek actual damages, punitive damages, costs and attorney's fees.

86. Plaintiffs are each a natural person and a resident and a citizen of the State of Connecticut and of the United States, and a "consumer."

87. Within one year prior to the filing of this case, defendant Colton RV did state or represent to these Plaintiffs that it would and did provide an extension of credit to Plaintiffs.

88. Subsequent to said representation, defendant Colton RV did deny the request of Plaintiff Diana Bellasalma for credit and did fail to provide her with the written statement and notice of such denial and the specific reasons therefore, in violation of the law.

89. Subsequent to said representation, defendant Colton RV did negatively change the terms of the credit offered plaintiff James Bellasalma and did fail to provide him with the written statement and notice of such negative change of terms and the specific reasons therefore, in violation of the law.

90. The referenced inquiries have become a permanent component of the credit profiles of Plaintiffs and is reported to those who ask to review the credit history of the Plaintiffs.

91. Defendant Colton RV was required pursuant to FCRA and/or ECOA to provide the applicable said "adverse action" notice to each plaintiff and failed to so do.

92.    Defendant Colton RV had an affirmative duty to follow reasonable
       procedures, including those that would prevent the failure described above.

93.    As a result of the above, inter alia, Defendant Colton RV willfully and/or
       negligently violated the provisions of the FCRA and/or the ECOA.

# FOURTH CLAIM: FRAUD

94.    The allegations of all other paragraphs and claims in this pleading are
       incorporated as if fully rewritten herein.

95.    This claim is in addition to and/or in the alternative to all other claims in
       this Complaint.

96.    This claim is for Fraud upon the Plaintiffs committed by Colton RV and for
       which Fifth Third is jointly and severally liable.

97.    During the course of the subject consumer transaction between the parties,
       the lies and/or false representations of fact above described were made by
       Colton RV, on the dates and by the persons so indicated above, with
       knowledge of their falsity and/or with utter disregard and recklessness
       about their falsity such that knowledge may be concluded or found, and/or
       with no basis for Colton RV believing that the information was factual.

98.    During the course of the subject consumer transaction between the parties,
       the  knowing concealments of fact above described were done by Colton RV
       at a time when, and under circumstances where, there was a duty to

disclose such.

99.     Each of Colton RV's acts and omissions and/or concealments were made with the intent of misleading Plaintiffs into relying upon it and with the intent of Colton RV to cause Plaintiffs to give up possession and control and ownership of their two trade in vehicles, to pay deposit and down payment monies to Colton RV, to sign the retail instalment contract sales agreement drafted by Colton RV, to incur financial obligations to purchase and pay for the subject Thor RV, not to leave Colton RV without purchasing the Thor RV, and not to purchase their desired Thor from some other RV retailer, and more.

100.    The Plaintiffs were each justified in relying on the lies and representations and lack of concealments by Colton RV and did, in fact, so rely.

101.    As a direct and proximate result of the above, Plaintiffs were each harmed and injured and the injury was caused by each plaintiff's reliance on the representations and lack of any concealment of any material or other matter.

## FIFTH CLAIM: SPECIFIC PERFORMANCE

102.    The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

103.    This claim is in addition to and/or in the alternative to all other claims in

this Complaint.

104.  This claim is for specific performance.

105.  Plaintiffs and Colton RV entered into a Retail Instalment Contract Sales Agreement drafted by Colton RV whereby Plaintiffs would purchase and Colton RV would sell a specific and certain 2022 Thor Miramar 34.6 recreational vehicle bearing a manufacturer's vehicle identification number 1F66F5DN2M0A08735. That agreement was assigned and/or acquired for consideration by Fifth Third.

106.  Each recreational vehicle is reported by the industry to be "hand built" and while there are thousands of RVs built every year, very few are reported by the industry to be alike, and each one contains a specific and unique vehicle identification number. The RV involved in this case is a 2022 model year and the new model year RV, with its new changes, is about to be released and defendant will not be able to get this model year in new condition after the new model year units are built and shipped.

107.  Plaintiffs have substantially performed their contractual obligations and have no remaining obligations but to the extent there are any, Plaintiffs are ready, willing and able to perform any remaining obligations.

108.  It is within the power of Colton RV and/or Fifth Third to perform.

109.  Colton RV refuses to complete it performance and there is no adequate remedy at law for Plaintiffs.

**WHEREFORE**, judgment is demanded against defendant as deemed proper and lawful by the Court, alternatively as follows:

## PRAYER FOR RELIEF

1. On the first claim, statutory and other damages in excess of $75,000, remedies, and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial;

2. On the second claim, statutory and other damages in excess of $75,000, remedies, and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial;

3. On the third claim, statutory and other damages, remedies and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial, and a permanent injunction barring defendant Colton RV from any future violations of the ECOA and/or FCRA;

4. On the fourth claim, actual and punitive damages, remedies and relief as deemed proper and lawful by the Court for each and every violation that may be proven at trial;

5. On the fifth claim, an Order requiring defendants to convey to Plaintiffs the vehicle title and/or registration for the specific and certain 2022 Thor Miramar 34.6 recreational vehicle bearing a manufacturer's vehicle identification number 1F66F5DN2M0A08735, and such other remedies and relief as deemed

proper and lawful by the Court.

**Plus** on each and every claim, expenses of suit and litigation, interest from the date the contract was consummated,, reasonable attorney fees, plus all costs, and any and all other legal and equitable relief deemed necessary and just.

Plaintiffs demand trial by jury on all claims and issues.

Respectfully submitted,

/s/Ronald L. Burdge
RONALD L. BURDGE
BURDGE LAW OFFICE
Attorney for Plaintiff
8250 Washington Village Dr.
Dayton, Ohio 45458
Telephone: 937.432.9500
Facsimile:   937.432.9503
Email:        Ron@RVLemonLaw.com

Y:\data\Bellasalma, Diana & James\Core Pleadings\Core Complaint 101022 aj.wpd

37