UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DIANA BELLASALMA,                                              **REPORT**
JAMES BELLASALMA,                                               **and**
                                                        **RECOMMENDATION**
                              Plaintiffs,

              v.

COLTON RV, LLC,                                          **22-CV-765JLS(F)**
FIFTH THIRD BANK, N.A.,

                              Defendants.
_____

APPEARANCES:              BURDGE LAW OFFICE
                          Attorneys for Plaintiffs
                          RONALD L. BURDGE, of Counsel
                          8250 Washington Village Drive
                          Dayton, Ohio  45458

                          DOMBROW LAW FIRM
                          Attorneys for Plaintiffs
                          RUSSELL W. DOMBROW, of Counsel
                          499 S. Warren Street
                          6th Floor
                          Syracuse, New York  13202-2609

                          RUPP PFALZGRAF LLC
                          Attorneys for Defendants
                          BENJAMIN D. BURGE,
                          JAMES J. GRABER, of Counsel
                          1600 Liberty Building
                          424 Main Street
                          Buffalo, New York  14202


                              **JURISDICTION**

       This case was referred to the undersigned by order of Hon. John L. Sinatra on

January 18, 2023 (Dkt. 15) for all pretrial matters.  It is presently before the court on

Defendants' motion to dismiss, and, alternatively, for summary judgment, filed January 17, 2023 (Dkt. 12).

## BACKGROUND

Defendants' motion to dismiss is brought in lieu of an answer pursuant to Fed.R.Civ.P. 12(b)(6) and, alternatively, pursuant to Rule 12(d), and was filed January 17, 2023 (Dkt. 12) with Declaration of Benjamin D. Burge, Esq. dated January 17, 2023 ("Burge Declaration") together with Exhibits A-F (Dkts. 12-1 – 12-2) ("Burge Declaration Exh(s). __"), and a Memorandum of Law In Support Of Defendants' Motion To Dismiss (Dkt. 12-3) ("Defendants' Memorandum"). Plaintiffs' Memorandum In Opposition To Defendants' Motion To Dismiss was filed February 21, 2023 (Dkt. 17) ("Plaintiffs' Memorandum"). On March 10, 2023, Defendants filed Reply Memorandum Of Law In Further Support Of Defendants' Motion To Dismiss (Dkt. 18) ("Defendants" Reply").

Plaintiffs' First Amended Complaint (Dkt. 4) (Burge Declaration Exh. B) alleges nine causes of action:  First Claim: Breach of Contract, Burge Declaration Exh. B ¶¶ 15-61; Second Claim: Violation of New York General Business Law § 349(a) and § 350, Burge Declaration Exh. B at ¶¶ 62-89; Third Claim: Violation of Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, and the New York Fair Credit Reporting Act, N.Y. Gen. Bus. Law. Act 25 §§ 380, *et seq.,* Burge Declaration Exh. B ¶ 90-104; Fourth Claim: Fraud, Burge Declaration Exh. B ¶¶ 105-113; Fifth Claim: Specific Performance, Burge Declaration Exh. B ¶¶ 114-121; Sixth Claim: Breach of Implied Covenant of Good Faith and Fair Dealing, Burge Declaration Exh. B ¶¶ 122-135; Seventh Claim: Negligent Infliction of Emotional Distress, Burge Declaration Exh. B ¶¶ 136-141; Eighth Claim: Intentional Infliction of Emotional Distress, Burge Declaration Exh. B ¶¶ 142-149; Ninth

Claim: Conversion, Burge Declaration Exh. B ¶¶ 150-160 ("Plaintiffs' Claims").  Plaintiffs allege damages in excess of $75,000 on Plaintiff's First, Second, Third, Fourth, Sixth, Seventh, Eighth, and Ninth claims.  Plaintiffs also seek punitive damages on Plaintiffs' Fourth, Eighth and Ninth Claims.  Burge Declaration Exh. B at 52-54 ¶¶ 4, 8, 9.  On Plaintiffs' Fifth Claim requesting specific performance, Plaintiffs request equitable relief in the form of an order requiring Defendants to convey to Plaintiffs the vehicle title and registration documents for the 2022 Thor Miramar 34.6 recreational vehicle Plaintiffs purchased from Defendants on August 26, 2022 (Dkt. 12-1 ¶ 10).  *Id.* at 53 ¶ 5.

In support of Defendants' motion, Defendants contend that Plaintiffs' First Amended Complaint must be dismissed in its entirety based on a settlement that parties agreed to by e-mails between counsel on October 7 and 11, 2022; alternatively, Defendants request dismissal of Plaintiff's Second, Fourth, Fifth, Sixth, Seventh, and Eighth claims.  Burge Declaration, Dkt. 12-1 at 6.  Oral argument was deemed unnecessary.  Based on the following, Defendants' motion requesting summary judgment should be GRANTED; alternatively, Defendants' motion to dismiss should be GRANTED in part, and DENIED in part.

## FACTS[1]

Sometime prior to August 19, 2022, Plaintiffs became interested in purchasing a 2022 Thor Miramar 34.6 recreational vehicle ("the 2022 Thor Miramar RV" or "the RV") and learned the closest dealer to Plaintiffs, who reside in Connecticut, was Defendant Colton RV ("Colton") located in North Tonawanda, New York within this district.  In the

---

[1]  Taken from the pleadings and papers filed in this action.

course of telephone communications with one Kevin Link, Colton's then finance manager ("Link"), regarding Plaintiffs' interest in purchasing a new 2022 Thor Miramar RV which Colton had available for sale, Plaintiffs provided to Colton descriptions of two vehicles, a Grand Design RV and a late model Ford pick-up truck with a luxury trim package ("the Ford truck"), which Plaintiffs intended to use as trade-ins ("the trade-ins") with approximations as to the balances then owed by Plaintiffs on the respective loans on the prospective trade-ins.  As requested by Colton, Plaintiffs also provided authorizations to Colton to enable Colton to obtain from Plaintiffs' lenders the actual amounts owed by Plaintiffs on the intended trade-ins.  Thereafter, on August 19, 2022, Link informed Plaintiffs that the amount owed to Citizens Bank ("Citizens Bank" or "Plaintiffs' Bank") on Plaintiffs' Ford truck, *i.e.*, the "pay-off,"  was $40,000 less that Plaintiffs had believed to be the case.  Plaintiffs did not attempt to verify this information with Plaintiffs' bank.  In response to Plaintiffs' inquiries regarding whether Colton had been given the correct balance on the Ford truck, Link assured Plaintiffs that the amount of the pay-off for the Ford truck Colton had received from Citizens Bank, the lien holder on the truck, was correct.  Based on these preliminary discussions, Plaintiffs decided to travel with the trade-in vehicles to North Tonawanda on August 26, 2022 to see the RV and complete the purchase of the RV with the trade-ins.

After inspecting the RV at Colton's dealership and further discussions with Colton regarding the prospective sale of the RV, Plaintiffs, on August 26, 2022, executed a Retail Instalment Sales Agreement ("the Sales Agreement") to purchase the RV for $169,998.  In addition to the RV, Plaintiffs also agreed to purchase a vehicle related service contract, Tire and Wheel protection, paint protection, roadside assistance and

windshield protection packages for $23,379 which amount was included in the RV's purchase price. As required by the Sales Agreement, Plaintiffs agreed to transfer, *i.e.*, trade-in, two vehicles, the Grand Design RV with an outstanding loan pay-off of $43,650.10 owed to M&T Bank, and the Ford truck, upon which an outstanding loan balance of $52,568.87 was then actually owed by Plaintiffs to Citizens Bank; however, the Sales Agreement stated the pay-off amount owed on the Ford truck was $40,000 less, or (although not stated in the First Amended Complaint) $12,568.87. As of August 26, 2022, Colton determined the resale value of the Grand Design RV to be $49,998 and that the resale value of the Ford truck to be $89,998, thus producing a potentially substantial profit to Colton upon Colton's resale of the trade-ins. In addition to the trade-ins, Plaintiffs paid $30,000 as the cash down-payment toward the RV's purchase price required by the Sales Agreement.

Following Plaintiffs' and Colton's execution of the Sales Agreement, which execution included Plaintiffs' assignment to Colton of their titles to the trade-in vehicles, Colton took possession of the trade-ins and placed a 30-day in-transit plate on the RV, permitting Plaintiffs to drive the RV to their home in Connecticut, expiring on September 26, 2022. Under the terms of the Sales Agreement, Colton was to pay off the outstanding loan balances on the two trade-ins thereby obtaining lien releases to enable Colton to resell the trade-ins. After completing the sale of the RV with Plaintiffs, Colton paid off the loan balance Plaintiffs owed to M&T Bank on the Grand Design RV but upon advising Plaintiffs by telephone, refused to pay off the loan on the Ford truck owed to Citizens Bank unless Plaintiffs paid an additional amount of $40,000 to Colton as a condition to Colton providing title documents for the RV to Plaintiffs required to enable

Plaintiffs to register the RV in Connecticut and operate it lawfully on public roads.  As a result of Colton's refusal to pay off the Ford truck, Plaintiffs remained obligated to make monthly payments, and have, since taking delivery of the RV, made such payments to Citizens Bank on the Ford truck loan.  Plaintiffs subsequently learned that Colton did not receive notice of the actual outstanding loan balance as to the Grand Design from M&T Bank and the Ford truck from Citizens Bank until August 28, 2022, which amount happened to be $ 40,000 more than the $ 12,568.87 pay-off amount Colton used in negotiating the sale of the RV to Plaintiffs.  Plaintiffs also were later informed by Defendant Fifth Third Bank ("Fifth Third" or "the bank") of the assignment by Colton of the Sales Agreement to the bank together with notice of the loan repayment schedule on the RV and, as a result, Plaintiffs have been required to make monthly installment payments to the bank for the RV which, although in Plaintiffs' possession, Plaintiff have not been able to register and thus are unable to drive the RV on public roads.  Plaintiffs also allege that Colton improperly changed the amount of Plaintiffs' monthly payment on the Sales Agreement to $1,058.34 from $1,044.37 as the monthly payment due on the RV as Colton had initially represented the Plaintiffs' monthly payment would be.  Colton also represented to Plaintiffs that new terms of credit would be required to be signed by Mr. Ballasalma only thereby changing the terms of the credit offered to Mrs. Ballasalma on August 26, 2022 in violation of federal and New York state law.  Plaintiffs further allege Colton misrepresented that the interest of 9.49% stated in the Sales Agreement was the best rate available by overstating the actual available rate of 4% resulting in an extra profit to Colton of $5,615.29.  Colton, despite Plaintiffs' request that Colton rescind the sale of the RV, refused Plaintiffs' request to cancel or rescind the Sales Agreement.

Following Colton's refusal to rescind the sale of the RV, the parties engaged in discussions through counsel, Benjamin D. Burge ("Burge") for Colton and the bank and Ronald L. Burdge ("Burdge") for Plaintiffs and had several communications between them during the period September and early October 2022 in an effort to settle the dispute.  As a result of such communications, on Friday, October 7, 2022, at 11:05 a.m., Burdge sent Burge an e-mail outlining two alternative settlement proposals from Plaintiffs: (1) Plaintiffs to pay Colton an additional "$20,000 and the rest of the deal stays the same," or (2) Plaintiffs to pay Colton an additional "$20,000 and the dealer [Colton][2] can cancel the soft add on's and the dealer can keep any refund it gets back from the cancellation and the rest of the deal stays the same."  ("the Burdge October 7, 2022 e-mail").  Because of a family illness, Burge was not in his office that Friday but was able to forward the Burdge October 7, 2022 e-mail settlement proposal to "his clients."  Monday, October 10, 2022, was a legal holiday, so Burge met with his client, Colton, on Tuesday, October 11, 2022 at 8:00 a.m.  Meanwhile, on Monday, October 10, 2022, Burdge sent an e-mail at 4:24 p.m. to Burge stating, *inter alia*, that Burdge "assum[ed] . . . [Defendant's] lack of a response [to the Burdge October 7, 2022 e-mail] indicates that the offer that the plaintiffs made is not acceptable to the [Colton] dealership [so] maybe it's time the plaintiffs become plaintiffs I guess . . ." ("the Burdge October 10, 2022 e-mail").  Burge, apparently, did not see Burdge's October 10, 2022 e-mail until he returned to his office on Tuesday, October 11, 2022.  After meeting with his clients, Burge e-mailed, on October 11, 2022 at 8:40 a.m., Colton's acceptance of the Burdge October 7, 2022 e-mail's proposed settlement terms ("the Burge October 11,

---

[2] Bracketed material added unless indicated otherwise.

2022 e-mail").  In relevant part, the Burge October 11, 2022 e-mail states "my guys are OK with Option 2 from your e-mail the other day [the Burdge October 7, 2022 e-mail] . . . Colton will release any title documents [to the RV] or registration upon receipt of the $20,000 [from Plaintiffs].  We have a deal?"  At 8:57 a.m., seventeen minutes after sending the Burdge October 11, 2022 e-mail, Burge received an e-mail from a paralegal, Ms. Alana James ("Ms. James") ("Ms. James's e-mail"), at Burdge's office stating "[a]ttached please find a copy of the Complaint that was filed yesterday in the above referenced matter."

## DISCUSSION

(1)    <u>Settlement</u>.

At the outset, the court addresses Defendants' main contention that the Burdge October 7, 2022 e-mail, offering two alternative settlement options, received by Defendants' counsel, Benjamin Burge, on October 7, 2022 was not revoked by the Burdge October 10, 2022 e-mail, prior to Defendants' acceptance of the second option by the Burge October 11, 2022 e-mail, such that an enforceable settlement agreement of the dispute between the parties was thus consummated on October 11, 2022 and thereby rendering Plaintiffs' claims implausible as moot.  *See* Defendants' Memorandum (Dkt. 12-3 at 9-13).  Preliminarily, the court addresses Defendants' contention that even if the court finds that the e-mails at issue are not before the court because they are not mentioned in the First Amended Complaint and thus cannot be considered on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the court should, alternatively, convert Defendants' motion to one for summary judgment pursuant to

Fed.R.Civ.P. 12(d) and, as such, consider the e-mails.  Defendants' Memorandum at 3 (Dkt. 12-3 at 8).

On a motion to dismiss under Rule 12(b)(6), the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (court is required to liberally construe the complaint, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor).  The Supreme Court requires application of "a 'plausibility standard,' which is guided by '[t]wo working principles.'"  *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  *Harris*, 572 F.3d at 72 (quoting *Iqbal*, 556 U.S. at 678).  "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the review court to draw on its judicial experience and common sense.'"  *Id*. (quoting *Iqbal*, 556 U.S. at 679).  Despite *Twombly*, courts remain obligated to liberally construe a *pro se* complaint.  *Harris*, 572 F.3d at 72 (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The

factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 570.  Simply put, unless the plaintiff pleads "enough facts to state a claim that is plausible on its face" so as to "nudge[ ] their claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly,* 550 U.S. at 570.

Generally, on a motion to dismiss, matters outside the complaint are not considered unless the motion is converted to one for summary judgment with notice to the parties and a reasonable opportunity to present all material pertinent to such motion under Fed.R.Civ.P. 56.  *See Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).  "Federal courts have 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings' offered in conjunction with a Rule 12(b)(6) motion, and thus complete discretion in determining whether to convert the motion to one for summary judgment; 'this discretion generally will be exercised on the basis of the district court's determination of whether or not the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the action.'"  *Carione v. United States,* 368 F.Supp.2d 186, 191 (E.D.N.Y. 2005) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, Civil § 1366 (3d ed. 2004)).  A district court may not, however, "convert a motion under Fed. R. Civ. P. 12(b)(6) into a Rule 56 motion for summary judgment without sufficient notice to an opposing party and an opportunity for that party to respond."  *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995).

Defendants contend that as Plaintiffs were aware of the e-mails which Defendants maintain constituted an effective settlement of the dispute, the court should convert Defendants' Rule 12(b)(6) motion to one for summary judgment in accordance with Rule 12(d).  Dkt. 12-3 at 8.  Plaintiffs oppose this request arguing the court should exercise its discretion and decline to consider the e-mails as extrinsic evidence leaving Defendants to address the issue of the effect of the e-mails on a formal summary judgment motion after deciding the merits of Defendants' Rule 12(b)(6) motion based on Plaintiffs' claims as alleged in the First Amended Complaint.  Plaintiffs' Memorandum at 12, Dkt. 17 at 12.  However, as Defendants contend, Dkt. 12-3 at 10 (referencing Plaintiffs' Memorandum at 12, Dkt. 17 at 12), Plaintiffs provide no reason why the court should decline to convert Defendants' motion pursuant to Rule 12(d) into one seeking summary judgment and because Plaintiffs concede the authenticity of the e-mails.  *See* Dkt. 17 at 6-7 nn. 14-16 (stating that true and accurate copies of the Burdge October 7, 2022 e-mail, the Burdge October 10, 2022 e-mail and the Burge October 11, 2022 e-mail are included in the Burge Declaration, Exhs. D, E and E, respectively).  Moreover, Plaintiffs have extensively argued against finding the e-mails constitute a binding settlement agreement.  *See* Plaintiffs' Memorandum at 5-10, Dkt. 17 at 5-10.  *See Hernandez v. Coffey, Co.*, 582 F.3d 303, 307 (2d Cir. 2009) (formal notice of conversion to summary judgment not required where party "'should reasonably have recognized the possibility that Rule 12(c) motion might be converted into one for summary judgment [and] was [neither] taken by surprise [nor] deprived of a reasonable opportunity to meet facts outside the pleadings'") (quoting *Villante v. Dep't of Corrections of City of New York,* 786 F.2d 516, 521 (2d Cir. 1986) ("*Villante*") (alterations in *Villante*)).  Accordingly,

as resolution of the settlement issue will dispose of the entire case and Plaintiffs cannot demonstrate  Plaintiffs were surprised by Defendants' request or lacked opportunity to oppose summary judgment, the court finds that conversion of Plaintiff's Rule 12(b)(6) motion to one for summary judgment as to whether Option 2 offer of settlement as stated in the Burdge October 7, 2022 e-mail was accepted by the Burge October 11, 2022 e-mail constituted an enforceable settlement, or whether the Burdge October 10, 2022 e-mail constituted a revocation prior to Defendants' acceptance, should be GRANTED and upon such conversion Defendants' motion for summary judgment should also be GRANTED.

New York law provides for the enforceability of settlement agreements reached by an exchange of e-mails between the attorneys for the parties.[3]  *See Herz v. Transamerica Life Ins. Co.*, 99 N.Y.S.3d 664, 668 (2d Dept. 2019); *Philadelphia Ins. Indem. Co. v. Kendall,* 151 N.Y.S.3d 392, 398 (1st Dept. 2011) (citing *Forcelli v. Gelco Corp.,* 972 N.Y.S.2d 570, 575-76 (2d Dept. 2013)).  Relevantly, N.Y.C.P.L.R. § 2104 requires that an out-of-court settlement is enforceable where a writing is signed by the party to be charged or the party's attorney.  To be enforceable, the agreement must set forth all material terms of the agreement.  *See Herz*, 99 N.Y.S.3d at 665.  A revocation of an offer is effective upon receipt provided it is received prior to acceptance which occurs upon dispatch, *e.g.*, mailing.  *See Wester v. Casein Co. of America*, 100 N.E. 488, 490 (N.Y. 1912); *Silber v. New York Life Ins. Co.*, 9938 N.Y.S.2d 46, 51 (1st Dept.

---

[3]  The state law of the forum applies to a diversity action, *Covington Specialty Ins. Co. v. Indian Lookout Country Club, Inc.*, 62 F.4th 748, 752 (2d Cir. 2023) ("It is true that since the district court was 'sitting in diversity,' it was bound to 'apply the substantive law of the forum [s]tate' – here, New York." (quoting *Principal Nat'l Life Ins. Co. v. Coassin*, 884 F.3d 130, 134 (2d Cir. 2018) (citation omitted)) and the parties do not dispute New York law is applicable to the substantive issues presented in this case.

2012) (citing *Morton's of Chicago/Great Neck, LLC v. Crab House, Inc.*, 746 N.Y.S.2d 317, 319 (2d Dept. 2002)); *Buchbinder Tunick & Co. v. Manhattan Nat'l Life Ins. Co.*, 631 N.Y.S.2d 148, 150-51 (1st Dept. 1995).  A revocation occurs when an offeror takes "'definite action inconsistent with an intention to enter into the proposed contract.'" *Norca Corp. v. Tokheim Corp.*, 643 N.Y.S.2d 139, 140 (2d Dept. 1996) (citing Restatement [Second] of Contracts § 43)).  Several undisputed facts in the instant case support the conclusion that on October 11, 2022, Defendants accepted the offer of settlement, specifically Option 2, proffered by Plaintiffs in the Burdge October 7, 2022 e-mail and that such offer was not revoked by the intervening Burdge October 10, 2022 e-mail, nor did the October 11, 2022 e-mail from Ms. James advising Defendants that the instant lawsuit had been filed constitute an effective revocation of the Burdge October 7, 2022 e-mail offer of settlement.

First, the language used by Burdge in the Burdge October 10, 2022 e-mail to Burge lacks required indicia of an enforceable revocation.  Under New York law, absent an unambiguous time limit for acceptance stated in the offer, an offer remains open to acceptance for a reasonable time, *Hagshama Manhattan 10 Gold, LLC v. Strulovitz*, 2021 WL 1178028, at *6 n. 5 (S.D.N.Y. Mar. 28, 2021) (citing Restatement, Law of Contracts § 40 sub d.[1], and *Maier v. Rebstock*, 87 N.Y.S. 85 (4th Dept. 1904)), and under New York law revocation requires "a <u>clear</u> manifestation of an intent not to perform," *Cumis Ins. Soc., Inc. v. Citibank, N.A.*, 921 F.Supp. 1100, 1106 (S.D.N.Y. 1996) (citing Restatement (Second) of Contracts § 42) (underlining added)[4].  Here, the Burdge October 7, 2022 e-mail did not include a stated time period during which any

---

4   Unless indicated otherwise all underlining is added.

acceptance was required thus supporting that Defendants' lack of immediate response over the holiday weekend was not a rejection of the offer and that Defendants' delay in responding was reasonable.  Several statements in the Burdge October 10, 2022 e-mail support this finding.

In the October 10, 2022 e-mail Burdge states, *inter alia*, that because he "assume[s] the lack of response indicates the offer [as stated in the earlier Burdge October 7, 2022 e-mail] that plaintiffs made is not acceptable to the dealership [Colton] maybe it's time the plaintiffs become plaintiffs I guess, I think we are probably at the point where we need to sort this out in court . . .."  Burdge Declaration Exh. E, Dkt. 12-2 at 102.  Further in the e-mail, Burdge goes on to muse about the efforts he, Burdge, expended to find an "amicable solution but this does not appear to be one where that will happen" . . ..  Burdge then states that he "had hoped to talk [with Burge] before officially giving up on the effort [to settle] but we can talk tomorrow [October 11, 2022] if you wish."  Burdge concludes by advising Burge that he is completing drafting of a complaint requesting Burge inform him whether Burge will accept service "so we can keep working on this.  Perhaps we will find an amicable solution yet."  *Id.*  After meeting with his clients on October 11, 2022 at 8:40 a.m., Burge e-mailed Defendants' acceptance of Option 2.  *Id.*; Burge Declaration (Dkt. 12-1) ¶ 11.  Far from a "clear manifestation," *Cumis Ins. Soc., Inc.*, 921 F.Supp. at 1102, of an intent to revoke the October 7, 2022 e-mail offer of settlement, the Burdge October 10, 2022 e-mail surmises that lack of a prompt response by Defendants to the offer indicates Defendants had rejected the proposed settlement offer, despite the fact that the October 7, 2022 e-mail set no deadline for Defendants' response which supports a finding that

Defendants' acceptance of the settlement offer on October 11, 2022 was reasonable and effective.  Further, after ruminating about the apparent (to Burdge) failure, up to that point, of the parties to settle the dispute, instead of stating, if a revocation of the offer was in fact intended by Plaintiffs, that the October 7, 2022 offer was withdrawn and thus revoked, Burdge expressly continues to state his hope that his invitation to further conversation with Burge would nevertheless result in a settlement: "I had hoped to talk [to Burge] before officially giving up on the effort [to settle] but we can talk tomorrow if you wish." *Id*.  Significantly, with a notable lack of clarity by Plaintiffs as to any intent to revoke the Burdge October 7, 2022 e-mail offer, Burdge's statement leaves open the possibility of settlement in concluding his October 10, 2022 e-mail in these words: "Perhaps we can find an amicable solution yet." *Id*.  These statements therefore are a far cry from a simple, straight-forward statement that the October 7, 2022 offer of settlement was revoked.

Nor is there any merit to Plaintiffs' contention advising in Ms. James's e-mail Plaintiffs had commenced the present action, Plaintiffs' "impliedly" revoked the then outstanding settlement offer.  *See* Plaintiffs' Memorandum at 5-9, Dkt. 17 at 5-9. Plaintiffs cite to no authority supporting Plaintiffs' novel theory that instituting litigation constitutes a revocation of a pending settlement offer and the court's research fails to reveal any such authority.  As Defendants correctly argue, lawyers often use the threat of litigation to induce settlement, Defendants' Reply at 2, Dkt. 18 at 6, and filing suit is not necessarily inconsistent with an on-going settlement negotiation. The court therefore finds Plaintiffs, by sending the Burdge October 10, 2022 e-mail and Ms. James's e-mail, did not take "definite" action inconsistent with an intention to enter into the proposed

settlement constituting a revocation of the Burdge October 10, 2022 e-mail offer.  *See Norca Corp.*, 643 N.S.Y.2d at 140.  Moreover, even assuming, *arguendo*, Ms. James's e-mail constituted an implied revocation, it was received by Defendants on October 11, 2022 at 8:57 a.m., whereas Defendants' acceptance of the October 7, 2022 e-mail offer Option 2 was sent, *i.e.*, dispatched, to Plaintiffs on October 11, 2022 at 8:40 a.m., and thus Ms. James's e-mail was ineffective to constitute a valid revocation prior to Defendants' acceptance.  *See Wester,* 100 N.E. at 490 (a revocation of an offer is effective upon receipt provided it is received prior to acceptance which occurs upon dispatch); *Silber*, 938 N.Y.S.2d at 51 (same); *Buchbinder Tunick & Co.*, 631 N.Y.S.2d at 150-51 (same).

Plaintiffs additionally assert that no settlement based on Defendants' acceptance of the Burdge's October 7, 2022 e-mail was effective because the e-mail lacked all terms material to constitute an offer.  Plaintiffs' Memorandum at 9-10; Dkt. 17 at 9-10 (citing caselaw).   Rather, Plaintiffs argue the Burdge October 7, 2022 e-mail merely "outlined the contours of a potential agreement but were not themselves complete."  *Id.* at 10.  In particular, Plaintiffs contend that the proposed settlement failed to provide for the manner and timing of the required $ 20,000 payment by Plaintiffs, the delivery of title and registration documents for the RV, a withdrawal of the In-Transit Permit or refunding or otherwise compensating Plaintiffs for the payments made since September 2022 by Plaintiffs on the Ford truck resulting from the failed attempt to settle during the parties' negotiations in September 2022.  *Id.*  However, the manner and timing of required payment is not necessarily a material issue negating that an offer was intended and is dependent on the facts of the transaction.  *See* Joseph M. Perillo, CONTRACTS, §

2.9 at 51 (7th ed. 2014) (missing material term may be implied by court from "surrounding circumstances or external sources").   Under New York law, a term not specifically provided for in an agreement "may be sufficiently definite if the . . . [term] can be determined objectively without the need for new expressions by the parties, . . . [by a method] found without the agreement or ascertained by preference to an extrinsic event, commercial practice or trade usage." *Cobble Hill Nursing Home, Inc. v. Henry and Warren Corp.*, 548 N.E. 203, 206 (N.Y. 1989) (citing *Metro-Goldwyn-Mayer v. Scheider*, 360 N.E.2d 930, 931 (N.Y. 1976)).  Here, although the October 7, 2022 – October 12, 2022 e-mail exchange which forms the settlement agreement of the parties does not provide for the manner of payment, such manner is readily ascertainable by reference to the common practice of completing similar transactions between counsel in similar circumstances.  *See id*. at 206 ("Before rejecting an agreement as indefinite, a court must be satisfied that the agreement cannot be rendered reasonably certain by reference to an extrinsic standard that make its meaning clear." (citing I Williston, Contracts § 47, at 153-156 (3d Ed. 1957)). In this case, Plaintiffs' check for $20,000, would in accord with such practice, be held in escrow by Plaintiffs' counsel, or Defendants' counsel, until the title and related documents for the RV necessary to register and title the RV in Connecticut were received by Plaintiffs' counsel, following the standard procedure for processing such papers in accordance with typical commercial practices prevailing in New York state.  *See ANI Pharmaceuticals, Inc. v. Cabaret Biotech Ltd.*, 2020 WL 1989400, at * 2 (S.D.N.Y. Apr. 26, 2020) (remarking that the parties to a contract entered into an escrow agreement pursuant to which payments owed would be held in escrow pending resolution of a dispute under a licensing

agreement); *Goldstein v. Gold*, 483 N.Y.S. 2d 375, 379 (2d Dept. 1984) (holding in the context of the sale of real property "the title insurance company should have held the mortgage money in escrow or delayed the closing until the satisfaction had been recorded or required the mortgagee to appear at the closing, all standard practices", *aff'd*, 485 N.E.2d 239 (N.Y. 1985). *See also Walk-In Medical Centers, Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 264 (2d Cir. 1987) (evidence of trade usage may be used, pursuant to New York law, to explain a contract term regardless of any degree of ambiguity relative to such term). As to the issue of withdrawal of the In-Transit Permit designation, Plaintiffs fail to explain why this issue rises to the level of constituting a material issue to be agreed upon and the court can think of none. Finally, Plaintiffs' belated assertion that the October 7, 2022 e-mail does not provide for Plaintiffs recoupment or crediting of the subsequent payments made by Plaintiffs on the Ford truck ignores that nothing in the record supports that Plaintiffs in formulating the October 7, 2022 settlement offer intended to seek such recoupment from Defendants or anticipated the need for crediting such payments in the event settlement was not achieved at that time. In short, Plaintiffs were the masters of the October 7, 2022 settlement offer and failed to address this potential issue in the offer. Thus, Plaintiffs' assertion amounts to an improper attempt to modify the terms of Plaintiffs' offer after the fact. It therefore cannot become a material issue after the fact because of Plaintiffs' refusal to proceed with the settlement effected by the Plaintiffs' October 7, 2022 offer and the Defendants' October 11, 2022 acceptance.

In sum, the issues pointed to by Plaintiffs as indicative of unagreed material terms rendering the putative settlement unenforceable are without substance. Based

on the foregoing, summary judgment should be GRANTED for the Defendants as to the existence of binding settlement agreement based on Defendants' October 11, 2022 acceptance of Plaintiffs' October 7, 2022 offer, Option 2.  Should the District Judge disagree with the foregoing recommendation, which, if adopted, disposes of the entire First Amended Complaint, then, in the alternative, the court turns to Defendants' motion to dismiss Plaintiffs' Second, Fourth, Fifth, Sixth, Seventh and Eighth claims.

(2)    Plaintiffs' Second, Fourth, Fifth, Sixth Seventh and Eighth Claims.[5]

A.    Plaintiffs' Second Claim Pursuant to N.Y. Gen. Bus. Law §§ 349, 350.

N.Y. Gen. Bus. Law § 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York State ("§ 349(a)").  A private cause of action to redress a violation of § 349(a) is provided by N.Y. Gen. Bus. Law § 349(h).  To establish a *prima facie* case under § 349(a) a plaintiff must allege "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result."  *Electra v. 59 Murray Enterprises, Inc.*, 987 F.3d 233, 258 (2d Cir. 2021).  In order to satisfy General Business Law § 349(a), plaintiffs' claims must be predicated on a deceptive act or practice that is "consumer oriented."  *Gaidon v. Guardian Life Ins. Co. of America*, 725 N.E.2d 598, 604 (N.Y. 1999) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 647 N.E.2d 741, 744 (N.Y. 1995)).  Although a plaintiff alleging a violation of § 349(a) need not allege "a repetition or pattern of

---

[5]  Contrary to Plaintiffs' assertion that Defendants' motion to dismiss is directed to Plaintiffs' breach of contract, Gen. Bus. Law § 349, 350, and fraud claims, *see* Dkt. 17 at 4, Defendants' motion is directed against Plaintiffs' Second, (Gen. Bus. Law §§ 349, 350), Fourth (fraud), Fifth (specific performance), Sixth (breach of implied covenant of good faith and fair dealing), Seventh (negligent infliction of mental distress) and Eighth (intentional infliction of mental distress) claims.  *See* Dkt. 12-1 at 6.

deceptive business," *Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 744, nevertheless, the alleged deceptive conduct "'must have a broad impact on consumers at large, [p]rivate contract disputes unique to the parties * * * would not fall within the ambit of the statute.'" *New York Univ. v. Continental Ins. Co.*, 662 N.E.2d 763, 770 (N.Y. 1995) (quoting *Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 745).

Here, Plaintiffs assert that Plaintiffs have plausibly alleged Defendants engaged in deceptive conduct by demanding Plaintiffs pay an additional $40,000 than was required by the Sales Agreement in order to gain title and registration of the RV, and that Defendants falsely changed the monthly payment due on the RV in the Sales Agreement. Plaintiffs' Memorandum at 16, Dkt. 17 at 16. However, the court fails to see how such allegations plausibly state a claim based on § 349(a). Specifically, that Defendant Colton failed to correctly ascertain the actual pay-off amount owed on the Ford truck by timely inquiry to Plaintiffs' lender, Citizen Bank, the lien holder on the truck, and then used its leverage of withholding title documents in order to force Plaintiffs to pay the $40,000 difference to offset a potential loss to Colton in obtaining clear title to the Ford truck trade-in, constitutes a private dispute peculiar to the parties and thus not a deceptive practice with broad consumer impact. Significantly, Plaintiffs do not allege Colton had a policy of acting in a similarly objectionable manner so as to have adversely affected similarly situated customers. *See Wilson v. Northwestern Mut. Ins. Co.*, 625 F.3d 54, 65 (2d Cir. 2010) (summary judgment granted on plaintiff's Gen. Bus. Law § 349(a) claim that defendant had breached in bad faith insured's life insurance policies, not that defendant had a policy of issuing life insurance policies that are deceptive); *Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 744-45

(consumer-oriented conduct requirement under § 349(a) may be satisfied by showing the conduct at issue "potentially affect[s] similarly situated consumers," and must "demonstrate that the acts or practices have a <u>broader</u> impact on consumers at large").

Here, Plaintiffs alleged, on information and belief, Defendants "dealt with Plaintiffs as they would have with any customer" wishing "to purchase, or to borrow money to purchase, a recreational vehicle."  Amended Complaint ¶ 70.  However, such allegations do not include that in dealing with other customers, Defendant Colton specifically engaged in the same deceptive practice, *i.e.*, negligently or intentionally misstating the amount owed on a prospective trade-in vehicle, which is the basic element of Plaintiffs' (§ 349(a)) deceptive practice claim.  Additionally, as the First Amended Complaint is unverified, such allegations on information and belief are insufficient to defeat Defendants' motion.  *See Curtis v. Cenlar FSB*, 645 Fed.Appx. 17, 20-21 (2d Cir. 2016) ("The relevant allegations in the verified complaint – all made '[u]pon information and belief' – are merely speculative, and by themselves insufficient to defeat defendants' motion."); *Prince v. Madison Square Garden*, 427 F.Supp.2d 372, 384 (S.D.N.Y. 2006) ("Conclusory pleadings on information and belief are inadequate as a matter of law to survive a motion to dismiss" unless they are 'accompanied by a statement of facts upon which the belief is found.") (internal quotations and citations omitted).

Finally, Plaintiffs' cases, *see* Dkt. 17 at 15 (citing cases) are distinguishable.  For example, in *Tate v. Fucillo Ford, Inc.*, 831 N.Y.S.2d 304, 306 (City Ct. Watertown, N.Y. 2007) the court found defendant's conduct in charging plaintiff for automobile repairs based on defendant's policy based on a "national time standard" rather than the actual

time required for such repairs without informing "each customer" such as plaintiff constituted a deceptive act directed to consumers in general.  Such misconduct by defendant in *Tate* bears no similarity to the discrete conduct of Defendant Colton, in its failure to ascertain or a disregard as to the correct amount of the debt owed by Plaintiffs on the Ford truck.  Similarly, in *KS Trade LLC v. Int'l Gemological Institute, Inc.*, 141 N.Y.S.3d 452, 455 (1st Dept. 2021) ("*KS Trade*") the alleged deceptive consumer oriented conduct involved the defendant's use through the "issuance of false appraisal certificates for over-graded diamonds that, were ultimately directed at misleading consumers into buying diamonds at artificially inflated prices" constituting a "harm to the public interest."  No use of such fraudulent forms by Defendants in connection with the sale of the RV is alleged by Plaintiffs in the instant case.  Thus, *KS Trade* is also inapposite.  In *Scott v. E. Hope Greenberg*, 2017 WL 1214441, at **16-17 (E.D.N.Y. Mar. 31, 2017) ("*Scott*"), a case involving alleged violations of the Fair Debt Collection Practices Act, the court refused to dismiss plaintiff's § 349(a) claim against defendant debt collector finding plaintiff's allegation that defendant had filed repeatedly, *i.e.*, "thousands," fraudulent collection lawsuits qualified as consumer-oriented conduct sufficient to sustain plaintiff's § 349(a) claim.  Here, as relevant, Plaintiffs allege, on information and belief, that Defendants "dealt with Plaintiffs as they would have with any customer contacting Defendants to purchase . . . a recreational vehicle."  Dkt. 4 ¶ 70. However, unlike the facts in *Scott*, such allegation does not assert that other customers would have been subjected to the kind of misrepresentation or negligent conduct resulting in the Defendant's later insistence that Plaintiffs pay to Defendants the full amount of unpaid debt Plaintiffs in fact owed on the Ford truck, which is the gravamen

of the First Amended Complaint.  Moreover, such allegation on information and belief is ineffective.  *See* Discussion, *supra*, at 21.  As such, *Scott* is inapplicable to the merits of Plaintiffs' § 349(a) claim.  By the same token, the facts in *Shostack v. Diller*, 2015 WL 5535808, at *8 (S.D.N.Y. Sept. 16, 2015), *report and recommendation adopted*, 2016 WL 958687 (S.D.N.Y. Mar. 8, 2015) ("*Shostack*") are dissimilar.  In *Shostack*, the court found, without plaintiff having specifically so alleged, that defendants' actions in erroneously processing a false mortgage application and placing the false information on defendant's website, based on a theft of plaintiff's identity resulting in a series of unwanted telephone solicitations, were part of defendants' "ordinary course of business."  Such extrapolation by the court from the facts alleged by plaintiff in *Shostack* is not warranted in the instant case as the alleged deceptive conduct, here, the Defendants' failure to ascertain and represent the correct amount owed on Plaintiffs' truck, cannot be said to constitute an act in the ordinary course of Defendants' business as such a course of conduct would result in a severe negative financial consequence to Defendants' ordinary business operation, whereas the conduct alleged in *Shostack* had no immediate negative financial effect on defendants' website financial operations, thus supporting the court's finding the defendants' failure to check the authenticity of the false application would likely not be done by defendants in all instances similar to plaintiff's.  *Shostack* thus provides no support to Plaintiffs' § 349(a) claims as alleged.  Accordingly, Plaintiffs have not plausibly alleged a violation of § 349(a) and Defendants' motion directed to Plaintiffs' Second Claim should be GRANTED to this claim.

For the purposes of Plaintiffs' § 350 claim,[6] "'false advertising' means advertising, including labeling, of a commodity . . . if such advertising is misleading in a material request."  N.Y. Gen. Bus. Law § 350-a[1].  N.Y. Gen. Bus. Law § 350-e[3] ("§ 350-e[3]") provides a cause of action for any person who is injured by a violation of Gen. Bus. Law § 350 (prohibiting false advertising in the conduct of any business, trade or consumer in New York State) ("§ 350").  For a valid claim pursuant to § 350-e[3] a plaintiff must allege conduct, *i.e.*, the false advertising, which is consumer oriented, like that required for a violation of § 349(a).  *See Hardy v. Olé Mexican Foods, Inc.*, 2023 WL 3577867, at *2 (2d Cir. May 23, 2023) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015))).  A valid § 350 claim requires "(1) that the . . . advertisement was consumer-oriented; (2) that the . . . advertisement was misleading in a material respect, and (3) that the plaintiff was injured as a result of the deceptive . . . advertisement."  *Pelman v. McDonald's Corp.*, 237 F.Supp.2d 512, 525 (S.D.N.Y. 2003).  However, unlike a § 349 claim, § 350 requires "that the plaintiff demonstrate reliance on the allegedly false advertising."  *Leider v. Ralfe*, 387 F.Supp.2d 283, 292 (S.D.N.Y. 2005) (citing *Small v. Lorillard Tobacco Co., Inc.,* 679 N.Y.S.2d 593, 599 (1st Dept. 1998)).  "Typically, this means that the plaintiff must 'point to [a] specific advertisement or public pronouncement' upon which he or she relied."  *Id.* (quoting *Small*, 689 N.Y.S.2d at 600); *see also Sabatano v. Iovate Health Sciences U.S.A., Inc.*, 2020 WL 3415252, at *3 (S.D.N.Y. June 22, 2020) (citing *Medisim Ltd. v. BestMed LLC*, 910 F.Supp.2d 591, 609

---

[6]  In the present case, Defendants' Memorandum does not specifically address Plaintiffs' § 350 claim, *see* Dkt. 12-3 (*passim*); Defendants make only a passing reference to such claim in Defendants' Reply. *See* Dkt. 18 at 13 (arguing the First Amended Complaint fails to detail the alleged false advertisements directed to the public at large and fails to allege a specific single advertisement by Defendants).  The court therefore addresses, without benefit of briefing by either party, Plaintiffs' § 350 claim in the interest of completeness.

(S.D.N.Y. 2012); *Medisim, Ltd.*, 910 F.Supp.2d at, 607 (citing *Leider*, 387 F.Supp.2d at 292).  As relevant to the instance case, a pleaded reliance on a defendant's alleged misrepresentations in the alleged false advertising is insufficient "where plaintiffs had a reasonable opportunity to discover the facts about the transaction beforehand by using ordinary intelligence." *Small,* 679 N.Y.S.2d at 600 (citing *Vermeer Owners v. Guterman*, 564 N.Y.S.2d 335, 337 (1st Dept. 1991), *aff'd*, 585 N.E.2d 335 (N.Y. 1991)).  "Only when defendants effectively controlled all the information about the transaction will the existence of misrepresentations give rise to an inference of reliance without need for further proof."  *Id.* (citing New York caselaw.  Here, Plaintiffs' allegations fairly read fail to plausibly state a § 350 claim for three reasons.

First, despite alleging that Defendant Colton regularly advertises on the internet, Dkt. 4 ¶ 74, the First Amended Complaint fails to allege a "specific advertisement" or other "<u>public</u> pronouncement" deceptive or false in nature by Defendants upon which Plaintiffs relied.  *See Sabatano*, 2020 WL 3415252, at *1 (alleged misrepresentations printed on defendant's packaging, *i.e.*, labels on bottles of defendant's muscle building pills), *Leider*, 387 F.Supp.2d at 293 (referencing defendants "undertook extensive marketing campaign . . . to boost demand" for diamonds); *Pelman*, 237 F.Supp.2d at 528 (defendant engaged in two advertising campaigns to promote consumption of defendant's products by public); *Small*, 679 N.Y.S.2d at 600 (dismissing complaint where plaintiffs failed to allege defendants engaged in any specific form of advertisement or other "<u>public</u> pronouncement" calculated to be seen by all class members falsely promoting healthy attributes of defendant's tobacco cigarettes).  In all four cases, the nature of the subject advertisement was directed to the general public

through public pronouncements, not as a result of private communications with specific individual plaintiffs as in the instant case where the gravamen of the First Amended Complaint is that Defendant Colton directly, not in any public pronouncement, through telephonic and in-person communications with Plaintiffs, misrepresented by $40,000 only to Plaintiffs the actual amount owed to Citibank on the Ford truck. *See* Dkt. 4 ¶ 23 (alleging Colton's RV's finance manager, Kevin Link in a telephone call, had "good news" for Plaintiffs specifically that the amount owed on the Ford truck was $40,000 less than Plaintiffs thought"), ¶ 26 (alleging that as part of the "sale and delivery process" with Plaintiffs Colton employees Chuck Partsch ("Partsch"), a Colton salesperson, and Link assured Plaintiffs that the pay-off amount on the Ford truck was about $40,000 less that Plaintiffs thought).  Second, as stated, *see* Discussion, *supra*, at 24-25, a plaintiff's reasonable reliance is a required element for a § 350 claim, *see Leider*, 387 F.Supp.2d at 292 (citing *Small*, 679 N.Y.S.2d at 500)).  Here, Plaintiffs do not allege that Plaintiffs did not have a reasonable opportunity to discover the correct amount of the debt owed by Plaintiffs on the Ford truck by using ordinary intelligence as required for a valid § 350 claim.  *See Small*, 679 N.Y.S.2d at 600.  Additionally, Plaintiffs fail to allege that Defendants created barriers to Plaintiffs' ability to exercise reasonable caution, for example, themselves as reasonable purchasers, by contacting Citizens Bank to verify the amount Plaintiffs owed on the Ford truck.  Nor could Plaintiffs do so as a phone call to Citizens Bank by Plaintiffs prior to consummating the sale on Friday, August 26, 2022,[7] could easily have ascertained the actual amount owed on the Ford truck prior to Plaintiff's execution of the Sales Agreement thereby completely obviating

---

[7]  The court takes judicial note that August 26, 2022 was a Friday, a normal business day.

the alleged misrepresentation of such amount by Defendant Colton.  Further, Plaintiffs

do not allege Defendants "effectively controlled all of the information," *Small*, 679

N.Y.S.2d at 600, about the proposed sale of the RV.  Plaintiffs' allegations that

Defendant Colton failed to reveal material facts, Dkt. 4 ¶ 84, and "concealed" its false,

deceptive and misleading information in regard to the $40,000 discrepancy as to the

amount asserted by Colton that was owed them on the Ford truck, Dkt. 4 ¶ 86, therefore

flies in the face of common sense.  On a Rule 12(b)(6) motion, courts are required to

read complaints in a common sense and reasonable fashion.  Applying the standard for

a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) "is 'a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense.'"  *In*

*re Amaranth Natural Gas Commodities Litigation*, 730 F.3d 170, 180 (2d Cir. 2013)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  Thus, Plaintiffs also fail to

plausibly allege Plaintiffs reasonably relied upon the Defendants' alleged false

"advertisement" even assuming the telephonic and in-person communications with

Plaintiffs by Colton as to the correct amount of the pay-off on the Ford truck constituted

a prohibited form of false advertising under § 350.  Third, Plaintiffs' allegation that the

Defendants engaged in false advertising by virtue of a "consumer transaction" between

Defendants and Plaintiffs, Dkt. 4 ¶ 82, and thus constitutes a "consumer-oriented"

advertisement also fails to plausibly plead the required degree of consumer orientation

under § 350, and flowing from Defendants' alleged misrepresentation, under New York

law.  To sustain a § 350 claim, all alleged false advertising in support of such claim must

"work a harm to the public at large," *Leider*, 387 F.Supp.2d at 292, as private contract

disputes do not qualify under § 350.  *See Canario v. Gunn*, 751 N.Y.S.2d 310, 311 (2d

Dept. 2002) ("General Business Law article 22-A, of which General Business Law §§ 349 and 350 are a part, is addressed to practices which 'have a broader impact on consumers at large.  Private contract disputes, unique to the parties * * * would not fall within the ambit of the statute.'" (quoting *Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 744)).

Plaintiffs also assert that Defendants' false advertising was consumer oriented based on Colton's misstatements alleged by Plaintiffs to be anti-competitive, its withholding of the Ford truck from the resale market for such vehicles and Colton's interference with Defendant Fifth Third's shareholder obligations including that of a consumer shareholder, as a result of Fifth Third's failure to timely record its lien on the Ford truck. Dkt. 4 ¶ 87.  However, competitors may invoke § 349 where the matter affects the "public interest in New York," *Medisim, Ltd.*, 910 F.Supp.2d at 607, and Plaintiffs fail to allege Defendants' conduct adversely affects the public interest in New York state.  Plaintiffs fail to point to any caselaw supporting that competitors may assert claims pursuant to § 350.  The court's research supports that competitors may assert § 350 claim where the defendant's conduct directly affects the interest of consumers at large. *RCA Trademark Mgt S.A.S. v. VOXX Intern'l. Corp.*, 2015 WL 5008762, at *3 (S.D.N.Y. Aug. 24, 2015).  Accordingly, as Colton's competitors could not have asserted a § 350 claim based on the alleged facts of this case, which do not support a misrepresentation by Colton to the general RV consumer market, neither may Plaintiffs. Plaintiffs' allegations of consumer-oriented falsehood based on Colton's inability to resell the Ford truck to the disadvantage of putative RV buyers is not the result of the alleged misrepresentation, rather it results from Colton's failure to pay off the Citizens

Bank's loan on the truck, and thus does not support Plaintiffs' assertion that the alleged Colton misrepresentation was itself consumer-oriented and thus constituted false advertising. As to any effects of the failed transaction regarding the Ford truck on Third Fifth's shareholders as Plaintiffs' assert, this allegation merely reinforces the fact that this dispute is one involving private parties, *i.e.*, Plaintiffs and Defendants, without discernable effect on unrelated consumers. In sum, Plaintiffs have failed to plausibly allege Defendants violated § 350 and Defendants' motion directed to this claim should be GRANTED.

      B.    <u>Plaintiffs' Fourth Claim – Fraud</u>.

      In Plaintiffs' Fourth Claim, Dkt. 4 ¶¶ 105-113, Plaintiffs alleged Defendant Colton made false representations of fact in an effort to induce Plaintiffs into purchasing the RV, including the trade-ins, with knowledge of such falsity and for the purpose of obtaining Plaintiffs' reliance thereupon and that Plaintiffs so relied. Defendants assert that Plaintiffs' allegations are insufficient as they fail to comply with the prerequisite to a valid fraud claim as provided in Fed.R.Civ.P. 9(b) ("Rule 9(b)") which requires a fraud claim be stated "with particularity." Specifically, Defendants contend the First Amended Complaint fails to particularize why the sole factual misrepresentation made by Defendant Colton – that the Ford truck loan pay-off amount was about $40,000 less than what Plaintiffs thought – was fraudulent. (Dkt. 12-3 at 21) (referencing Dkt. 4 ¶¶ 25-26). Defendants also contend this allegation fails to allege the date, time or place of the statement.[8] *Id.* In opposition, Plaintiffs argue that Plaintiffs' allegations are

---

[8] The court notes Defendants do not contend that the Plaintiffs' Fourth Claim fails for lack of particularized pleading with respect to the required element of Plaintiffs' reasonable reliance on Colton's misrepresentation. *See* Defendants' Memorandum (Dkt. 12-3), *passim*; Defendants' Reply (Dkt. 18), *passim*. Accordingly, the court does not address this issue.

sufficient for a fraud claim under New York law in that to sustain such claim a plaintiff must prove a misrepresentation or material omission of fact known to be false by defendant for the purpose of inducing the other party's reasonable reliance upon such falsity with resulting injury. Plaintiffs' Memorandum, Dkt. 17 at 17. In reply, Defendants assert Plaintiffs' reliance on New York law does not satisfy Rule 9(b) particularity requirements. Defendants' Reply, Dkt. 18 at 12. Although Plaintiffs do not specify that Colton's representations as to the actual amount owed on the Ford truck, as the First Amended Complaint alleges, Dkt. 4 ¶¶ 23, 25, 26, were in fact fraudulent, that the Amended Complaint also alleges that four days after taking delivery of the RV, Colton contacted Plaintiffs informing them that an additional $40,000 was still owed on the RV to Citizens Bank, Dkt. 4 ¶ 32, supports a fair inference that Plaintiffs' allegations intend to state that the representations made by Link and Partsch were when made fraudulent. *See* Dkt. 4 ¶ 23 ("On or about August 19, 2022, Kevin Link, telephoned Plaintiffs with what he said was 'good news,' . . . "that the loan payoff on the Ford truck trade in was actually $40,000 less than Plaintiffs thought."); ¶ 25 ("Upon Plaintiffs' arrival at Colton RV on August 26, 2022, Colton RV's salesperson Chuck Partsch, and finance manager Kevin Link, . . . made more specific representations to Plaintiffs as to the pay-off amount owed on Plaintiffs' two trade in vehicles."); ¶ 26 (Partsch and Link made the $40,000 representation regarding Plaintiffs' Ford truck during pre-sale negotiations). Plaintiffs also assert Link misrepresented the interest rate at 9.49% as the "best he could give," Dkt. 17 at 18, when in fact this was not true (Dkt. 4 ¶ 53) and that Colton misrepresented that Plaintiffs' monthly payment as $1,044.37 but the Sales Agreement prepared by Colton states it was $1,058.34. (Dkt. 4 ¶ 38).

In deciding whether to sustain a pleading under Rule 9(b), courts are required to determine that the pleadings detail the statements or omissions plaintiff contends are fraudulent, identify the speaker, state where and when the statements or omissions were made and explain why the statements or omissions were fraudulent. *Loreley Financing (Jersey) No. 3 Ltd. V. Wells Fargo Securities, LLC*, 797 F.3d 160, 171 (2d Cir. 2015). Plaintiff's fraud allegations "must give rise to a strong inference of fraudulent intent." *Id.* In determining the adequacy of a plaintiff's fraud pleadings, courts are required to "view the alleged facts in their totality, not in isolation." *Id.* Here, the court finds Plaintiffs' Fourth Claim alleging Defendants' fraud comports with Rule 9(b). First, the alleged fraudulent statements are sufficiently pleaded, *i.e.*, the Link and Partsch statements that the pay-off on the Ford truck was $40,000 less that Plaintiffs expected when in fact such statement was untrue. Second, Link and Partsch were identified as the utterers of the fraudulent statements. Third, the context of the allegations makes it reasonably clear that the statements were made at Colton's place of business on August 19, 2022 and August 26, 2022. Fourth, the context in which the statements were made plausibly supports that this was done intentionally to induce Plaintiffs to purchase the RV or in gross disregard for the actual amount owed by Plaintiffs on the Ford truck *See S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp*., 84 F.3d 629, 634 (2d Cir. 1996) (holding a common law fraud claim can be established by "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness"). In either case, taken as a whole, Plaintiffs' allegations sufficiently explain why the statements are fraudulent and give rise to a strong inference of fraudulent intent. *Loreley Financing (Jersey) No. 3, Ltd*., 797 F.3d at 171. Accordingly, Defendants'

contentions in support of Defendants' motion directed to Plaintiffs' Fourth Claim are without merit, and Defendants' motion directed to Plaintiffs' fraud claim should be DENIED.

      C.    <u>Plaintiffs' Fifth Claim – Specific Performance</u>.

In Plaintiffs' Fifth Claim (Dkt.4 ¶ 114-121), Plaintiffs request specific performance of the Sales Agreement by Defendants.  Defendants maintain there is no cause of action for specific performance of a contract cognizable under New York law.  Dkt. 12-3 at 14-15.  Plaintiffs counter by arguing that even if specific performance is not a recognized cause of action under New York law, dismissal is not required as such determination should be made upon a more complete record.  Plaintiffs' Memorandum, Dkt. 7 at 13 (citing New York caselaw).  In reply, Defendants argue Plaintiffs have conceded Defendants' argument and that the New York cases cited by Plaintiffs merely hold that whether a plaintiff is entitled to specific performance should be determined after a finding is made with respect to Plaintiffs' breach of contract claim. Dkt. 18 at 12. However, such a holding is procedural in nature and not controlling in a federal court action based on diversity.  *See Tutor Perini Building Corp. v. New York City Regional Center, LLC,* 525 F.Supp.3d 482, 503 (S.D.N.Y. 2021) (citing *Shady Grove Orthopedic Assos., P.A. v. Allstate Ins. Co.*, 599 U.S. 393, 408 (2010)).   In particular, under New York law specific performance is not a cause of action, it is a remedy.  *See Walton & Willet Stone Block, LLC v. City of Oswego Community Development Office*, 170 N.Y.S.3d 750 (4th Dept. 2022) (specific performance is an equitable remedy not a separate cause of action (citing caselaw).  Relevantly, federal courts will dismiss, pursuant to Rule 12(b)(6), a claim based on specific performance.  *See Tierney v.*

*Omnicom Group Inc.*, 2007 WL 2012412, at *10 (S.D.N.Y. July 11, 2007) (dismissing

plaintiff's specific performance claim holding that "specific performance is a remedy, and

a remedy itself cannot be a cause of action") (citing *Hi Pockets, Inc. v. Music

Conservatory of Westchester, Inc.*, 192 F.Supp.2d 143, 160 (S.D.N.Y. 2002)).  As such,

Plaintiffs' Fifth Claim fails to state a plausible claim.  Accordingly, Defendants' motion

directed to Plaintiffs' Fifth Claim should be GRANTED.

      D.    <u>Plaintiffs' Sixth Claim – Breach of Covenant of Good Faith and Fair
Dealing</u>.

In support of this claim, Plaintiffs allege, in thirteen paragraphs, Dkt. 4 ¶¶ 122-

135, that following execution of the Sales Agreement, Colton demanded Plaintiffs pay

an additional amount in excess of $52,000 in order to obtain title and registration

documents for the RV from Colton.[9]  *See* Dkt. 4 ¶ 128.  Plaintiffs' allegations also

include assertions regarding Plaintiffs' obligation to continue to make payments on the

Ford truck to preserve Plaintiffs' credit.  Dkt. 4 ¶ 131.  Plaintiffs further allege Colton's

conduct was done with the knowledge that it would preclude Plaintiffs from using the RV

causing Plaintiffs emotional distress.  Dkt. 4 ¶¶ 132, 133.  Defendants contend this

claim is subject to dismissal as it duplicates Plaintiffs' breach of contract claim.

Defendants' Memorandum (Dkt. 112-3 at 15-16) (citing caselaw).  Plaintiffs assert

dismissal is not warranted as these claims are not duplicative.  Plaintiffs' Memorandum

(Dkt. 17 at 13-14).

---

[9] Defendants specifically demanded Plaintiffs pay an additional $ 52,568.87, the correct amount of the
Ford truck loan pay-off when the Sales Agreement was signed by Plaintiffs on August 26, 2022.  Dkt. 4 at
¶ 4.  Why Defendants increased the amount demanded from $ 40,000, *id.* ¶¶ 34, 36, to the full amount of
the loan pay-off is not explained in the record.

"An implied covenant of good faith and fair dealing is implied in every contract governed by New York law, and it precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement."  *Tierney*, 2007 WL 2012412, at *7 (citing *Leberman v. John Blair & Co.,* 880 F.2d 1555, 1560 (2d Cir. 1989)).  However, "'if the allegations [in support of the claim] do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claims [*sic*] in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.'"  *Tierney*, 2007 WL 2012412, at *7 (quoting *Hall v. Earthlink Network, Inc.,*  396 F.3d 500, 508 (2d Cir 2005) (quoting *Careau & Co. v. Security Pac. Bus. Credit, Inc.*, 272 Cal.Rptr 387, 400 (2D Cir. 1990)).  *See also 147 First Realty LLC v. Aspen American Insurance Company,* 2023 WL 3014780, at *2 n. 2 (2d Cir. Apr. 20, 2023) (noting conclusion that dismissal of breach of contract claim required dismissal of duplicate breach of implied covenant of good faith and fair dealing claim (citing *New York Univ. v. Cont'l Ins. Co.,* 662 N.E.2d, 763, 770 (N.Y. 1995)); *Danusiar v. Auditchain USA, Inc.*, 2020 WL 6126378, at *10 (S.D.N.Y. Oct. 8, 2020) (dismissing  plaintiff's claim for breach of implied covenant of good faith and fair dealing as duplicative of plaintiff's breach of contract claim because it pleads defendant failed to act in good faith in performing their obligations under the subject employment agreement).  Here, a fair reading of Plaintiffs' breach of contract claim (Plaintiffs' First Claim) indicates Plaintiffs' Sixth Claim is essentially duplicative of Plaintiffs' First Claim.  In particular, in Plaintiffs' First Claim alleging breach of contract, Plaintiffs allege that after the Sales Agreement was executed on August 26, 2022, Colton refused to pay off the outstanding loan on

Plaintiffs' Ford truck unless Plaintiffs paid an additional $40,000 and that such conduct was used to force Plaintiffs to continue making payments on the truck's loan or incur severe adverse effects on Plaintiffs' credit rating thereby pressuring Plaintiffs into acceding to Defendants' demand. Dkt. 4 ¶¶ 34, 35. Thus, Plaintiffs' First Claim for breach of contract is substantially predicated on the same allegations pertaining to the events after execution of the Sales Agreement which demonstrate Defendants breached the Sales Agreement as Plaintiffs assert in support of Plaintiffs' Sixth Claim. Accordingly, Defendants' motion directed to this claim should be GRANTED.

      E.    <u>Plaintiffs' Seventh Claim – Negligent Infliction of Mental Distress</u>.

      Plaintiffs' Seventh Claim alleges Defendants negligently inflicted emotional distress upon Plaintiffs resulting from Defendant Colton's negligent breach of Defendants' duty of good faith and fair dealing arising from Colton's obligation not to violate New York consumer protection statutes such as N.Y. Gen. Bus. Law §§ 349, 350, the New York Fair Credit Rights Act,[10] the Federal Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.*, and the N.Y. Fair Credit Reporting Act, N.Y. Gen.Bus. Law Art. 25, §§ 380-u *et seq.*, Dkt. 4 ¶¶ 138-141. Under applicable New York law, in order to state a claim for negligent infliction of emotional distress a plaintiff must allege (1) that defendant was negligent in creating an unreasonable risk of bodily harm to plaintiff, (2) that such conduct was a substantial factor in causing injury, *i.e.*, emotional distress to plaintiff, and (3) that the plaintiff's injuries are a consequence resulting from plaintiff's contemporaneous observation of serious physical injury or death inflicted by defendant's conduct on a

---

[10] The court's research was unable to locate such a statute.

member of plaintiff's immediate family in his or her presence.  *Vieira v. Honeoye Central School District*, 746 F.Supp.2d 302, 309 (W.D.N.Y. 2010) (citing *Siben v. American Airlines*, 913 F.Supp. 271, 279 (S.D.N.Y. 1996) (citing *Bovsun v. Sanperi*, 461 N.E.2d 843, 844 (N.Y. 1984) (*reconsidered on other grds*, 2013 WL 1915771( W.D.N.Y. May 8, 2013)).  Although actual physical injury to plaintiff is no longer required, a negligent infliction of emotional distress claim must demonstrate plaintiff was "'put in fear of his [or her] personal safety as a result of a traumatic event.'"  *Vieira*, 746 F.Supp.2d at 310 (quoting *Wilson v. Conrail*, 810 F.Supp. 411, 416 (N.D.N.Y. 1993) (citing New York caselaw)).  Here, a fair reading of Plaintiffs' Seventh Claim indicates the claim, as alleged, fails to include any allegation that Defendants' breach of duty as alleged resulted in Plaintiffs being placed in fear of physical injury as a result of a traumatic event caused by Colton.  Thus, Plaintiffs' Seventh Claim fails to plausibly allege a valid claim for negligent infliction of emotional distress on this basis and rendering it unnecessary to address whether Defendant Colton owed any cognizable legal duty to Plaintiffs as alleged in Plaintiffs' Seventh Claim (*see* Dkt. 4 ¶ 139) sufficient to support a negligence claim.  Although Defendants argue that in order to maintain a claim of negligent infliction of emotional distress, some New York courts also require that a defendant's conduct was extreme and outrageous, *see* Defendants' Memorandum, Dkt. 12-3 at 17 (citing *Melendez v. City of New York,* 98 N.Y.S.3d 178, 179-80 (1st Dept. 2019) ("*Melendez*") (citing *Lau v. S & M Enters.,* 898 N.Y.S.2d 42, 43 (1st Dept. 2010); *Sheila C. v. Povich*, 781 N.Y.S.2d 342, 351 (1st Dept. 2004)), the Appellate Division First Department recently, on March 9, 2023, abrogated such holdings and indicated its agreement with prior contrary holdings by the 2d, 3d, and 4th Departments.  *See Brown*

*v. New York Design Center, Inc.*, 185 N.Y.S.3d 97, 102 (1st Dept. 2023) ("As such, we now hold that extreme and outrageous conduct is not an essential element of a cause of action . . . for negligent infliction of emotional distress.")

Finally, Plaintiffs' failure to oppose Defendants' motion directed to this claim constitutes an abandonment of such claim.  *See Colbert v. Rio Tinto PLC*, 824 Fed.Appx. 5, 11 (2d Cir. 2020) (observing "district courts frequently dismiss claims abandoned when counseled plaintiffs fail to provide arguments in opposition at the motion to dismiss stage," and that the Second Circuit has only "been willing to depart from this practice in order to avoid manifest injustice." (citing cases)).  Such manifest injustice includes where the district court had earlier ruled "the exact same factual allegation was sufficient to survive a motion to dismiss in a related proceeding involving the same defendant . . . and the same legal claim . . .."  *Id*. at * 12. *See Johnson v. City of New York*, 2017 WL 2312924, at *18 (S.D.N.Y. May 26, 2017) (dismissing as abandoned the plaintiff's malicious prosecution claim where the plaintiff failed to argue in opposition to the defendants' motion to dismiss, or to otherwise address, the claim).  Here, no injustice will occur based on Plaintiffs' failure to respond to Defendants' arguments concerning Plaintiffs' Seventh Claim.  Accordingly, Defendants' motion directed to Plaintiffs' Seventh Claim should be GRANTED.

     F.    <u>Plaintiffs' Eighth Claim – Intentional Infliction of Emotional Distress</u>.

For Plaintiffs' Eighth Claim, alleging Defendant Colton's actions and omissions constituted extreme and outrageous conduct based on Colton's failure to advise Plaintiffs of the correct amount Plaintiffs owed on the Ford truck and then, despite including the erroneous amount of pay-off requirement in the Sales Agreement,

demanding Plaintiffs pay the additional $40,000 as a condition to obtaining from Colton the documents necessary to Plaintiffs being able to title and register the RV with the result that Plaintiffs were obliged to continue payments to Citizens Bank on the Ford truck but were unable to operate the RV.  Dkt. 4 ¶¶ 142 (incorporating by reference ¶¶ 23, 27, 32, 36, 38, 53).  In order to sustain a claim of intentional infliction of emotional distress in federal court a Plaintiff must plausibly allege a defendant engaged in "'(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.'"  *Chanko v. American Broadcasting Companies Inc.*, 49 N.E.3d 1171, 1178 (N.Y. 2016) ("*Chanko*") (quoting *Howell v. New York Post Co.,* 612 N.E.2d 699, 702 (N.Y. 1993)).  Particularly, the alleged conduct giving rise to the tort must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Howell*, 612 N.E.2d at 702 (quoting *Murphy v. American Home Prods. Corp.*, 448 N.E.2d 86, 90 (N.Y. 1983) (quoting Restatement [Second] of Torts § 46, comment d)).  In *Chanko*, the court held the defendants' conduct, despite deserving of condemnation, in allowing a televised broadcasting of plaintiff's decedent's death did not satisfy this "exceedingly high legal standard" for liability for an intentional infliction of emotional distress claim.  *Chanko*, 49 N.E.3d at 1179.  Defendants' conduct in failing to ascertain the correct pay-off on Plaintiffs' Ford truck and after execution of the Sales Agreement, refusing to provide Plaintiffs with documents necessary to title and register the RV in Plaintiffs' name unless Plaintiffs paid Colton an additional $40,000, while arguably reprehensible, does not

satisfy the high standard necessary to sustain this claim.  Specifically, Plaintiffs'

allegations fail to plausibly allege Colton's conduct was so "atrocious and utterly

intolerable," *Chanko*, 49 N.E.3d at 1179, as to constitute a required element of the tort

of intentional infliction of emotional distress.

Finally, as with Plaintiffs' Seventh Claim for negligent infliction of emotional

distress, *see* Discussion, *supra*, at 36-37, Plaintiffs' failure to oppose Defendants'

motion directed to this claim constitutes an abandonment of such claim.  *See Colbert v.*

*Rio Tinto PLC*, 824 Fed.Appx. 5, 11 (2d Cir. 2020) (observing "district courts frequently

dismiss claims abandoned when counseled plaintiffs fail to provide arguments in

opposition at the motion to dismiss stage," and that the Second Circuit has only "been

willing to depart from this practice in order to avoid manifest injustice." (citing cases)).

Such manifest injustice includes where the district court had earlier ruled "the exact

same factual allegation was sufficient to survive a motion to dismiss in a related

proceeding involving the same defendant . . . and the same legal claim . . .."  *Id*. at * 12.

*See Johnson v. City of New York*, 2017 WL 2312924, at *18 (S.D.N.Y. May 26, 2017)

(dismissing as abandoned the plaintiff's malicious prosecution claim where the plaintiff

failed to argue in opposition to the defendants' motion to dismiss, or to otherwise

address, the claim).  Here, no injustice to Plaintiffs will occur based on Plaintiffs' failure

to respond to Defendants' arguments concerning Plaintiffs' Eighth Claim.  Accordingly,

Defendants' motion directed to this claim should be GRANTED.

In sum, Defendants' alternative motion for summary judgment seeking

enforcement of the settlement between the parties should be GRANTED; alternatively,

should the District Judge disagree, Defendants' alternative motion directed to Plaintiffs'

Second Claim alleging violations of N.Y.Gen.Bus. Law §§ 349, 350 should be

GRANTED; Defendants' motion directed to Plaintiffs' Fourth Claim alleging fraud should

be DENIED; Defendants' motion directed to Plaintiffs' Fifth Claim requesting specific

performance, Sixth Claim alleging Defendants' breach of covenant of good faith and fair

dealing, Seventh Claim alleging negligent infliction of emotional distress, and Plaintiffs'

Eighth Claim alleging intentional infliction of emotional distress should be GRANTED.

(3)    <u>Dismissal with Prejudice</u>.

Insofar as the District Judge treats Defendants' motion as seeking dismissal for

failure to state a claim, the dismissal of a plaintiff's claims for failure to state a claim is

generally without prejudice and with leave to replead, although "[w]here it appears that

granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion

to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.

1993).  Here, the problems with the Second, Fifth, Sixth, Seventh and Eighth Claims for

which the undersigned is recommending dismissal are substantive such that further

pleading cannot cure such impediments.  In these circumstances, amendment of the

Second, Fifth, Sixth, Seventh and Eighth Claims would be futile.

In particular, with regard to the Second Claim, the circumstances presented here

render it unlikely Plaintiff can plead the requisite consumer-oriented harm for claims

based on N.Y. Gen. Bus. Law §§ 349(a) and 350.  With regard to the Fifth Claim, courts

have consistently held specific performance is not a viable claim but a remedy such that

Plaintiffs cannot plead around this deficiency.  As regards the Sixth Claim for breach of

the covenant of good faith and fair dealing, it is unlikely Plaintiffs can plead around the

duplicative nature of the First Claim for breach of contract.  Plaintiffs' Seventh Claim for

negligent infliction of emotional distress fails to allege the requisite threat of bodily injury and such allegation is improbable under the circumstances alleged here.  Finally, with respect to the Eighth Claim, based on relevant caselaw, it is highly unlikely that the alleged misrepresentation on which this action is predicated can be repleaded so as to satisfy the extremely high standard for an intentional infliction of emotional distress claim.  Accordingly, these claims should be dismissed with prejudice and without leave to replead.

## CONCLUSION

Based on the foregoing, Defendants' motion seeking summary judgment (Dkt. 12) should be GRANTED; alternatively, Defendants' motion to dismiss should be GRANTED in part and DENIED in part, and dismissal of the Second, Fifth, Sixth, Seventh, and Eighth Claims should be WITH PREJUDICE.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated:  July 19, 2023
        Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for Plaintiffs and Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated:  July 19, 2023
        Buffalo, New York